UNITED STATES of America, Plaintiff–Appellee,

v.

Fidel VALDEZ, Defendant–Appellant.

No. 89–1347.

United States Court of Appeals, Tenth Circuit.

Oct. 24, 1990.

Normando R. Pacheco, Denver, Colo., for defendant-appellant.

James R. Allison, Asst. U.S. Atty. (Michael J. Norton, U.S. Atty., with him on the brief), Denver, Colo., for plaintiff-appellee.

Before BALDOCK and SETH, Circuit Judges, and PARKER, District Judge *.

SETH, Circuit Judge.

Appellant Valdez appeals from his conviction under 8 U.S.C. § 1326 for Re–Entry of Deported Alien. Valdez contends that the two deportation hearings used as the basis for his criminal conviction under § 1326 violated his due process. Specifically Valdez claims that the immigration law judges in both deportation hearings did not warn him of his right to remain silent during the proceedings. Appellant argues that this lack of warning was fundamentally unfair, prejudicial, and contrary to Immigration and Naturalization Service (I.N.S.) Regulations. For the reasons that follow, we reject appellant's arguments and affirm the decision of the trial court.

Valdez was first deported on March 26, 1988. Records introduced at trial show that Valdez appeared before Immigration Law Judge Daniel L. Kahn on March 21, 1988. Judge Kahn found appellant to be a deportable alien and issued a warrant of deportation. After the hearing Valdez was given a copy of I.N.S. Form I–294 in Span-

ish and English which explained the criminal consequences of re-entry into the United States. Valdez signed the warrant and left for Mexico.

On December 24, 1988, Valdez was back in the United States and was arrested by I.N.S. agents in Pueblo, Colorado. In his second deportation hearing on January 9, 1989, Immigration Law Judge William F. Nail again found Valdez to be a deportable alien. Valdez was given I.N.S. Form I–294 and he left for Mexico on January 14, 1989.

Valdez's stay in Mexico was brief. In May 1989 I.N.S. officers in Pueblo arrested Valdez for the third time and the United States brought suit under § 1326. Valdez was tried by jury and convicted of two counts of violating § 1326.

Valdez filed motions before, during and after the trial in district court seeking to collaterally attack the underlying deportation orders. These motions were denied.

Both the first and second deportation hearings which Valdez contests were conducted in similar fashion. The hearings were initiated with service of an Order to Show Cause issued pursuant to Title 8, Section 242.1(c), of the Code of Federal Regulations (C.F.R.). The immigration law judge conducted the hearings by telephone hook-up, with Valdez and other respondents at the Wackenhut facility in Aurora, Colorado, the I.N.S. attorney in Denver, and the immigration law judge in Seattle. Interpreters were present with Valdez in Aurora, Colorado and with the immigration law judge in Seattle.

The record indicates that at each hearing the immigration law judge advised the respondents as a group of their right to be represented by counsel at their own expense. The judge provided them with a list of legal aid organizations which would represent aliens. Respondents at both hearings were also asked if they wanted to speak for themselves or wanted a continuance to obtain an attorney. And, they were each given a form detailing their

* Honorable James A. Parker, United States District Judge for the District of New Mexico, sitting by designation.

right to appeal the hearing. Respondents were not advised that they could remain silent.

Valdez chose not to obtain the assistance of an attorney. In fact, at the second deportation hearing Judge Nail specifically asked Valdez if he wanted a lawyer or wanted to speak for himself. Valdez responded stating, "I just want to be deported." (Vol. III: 96). At both hearings Valdez admitted that he was a citizen of Mexico and had not obtained permission to re-enter the United States.

■■■ A collateral attack on the constitutional validity of deportation proceedings underlying a § 1326 criminal prosecution is a mixed question of law and fact. *United States v. Villa–Fabela,* 882 F.2d 434, 437 (9th Cir.). This court will review *de novo* a mixed question of law and fact involving constitutional rights. *See United States v. Buchanan,* 891 F.2d 1436, 1440 (10th Cir.).

■ Valdez asserts that the immigration law judge's failure to inform him that he could remain silent during the hearing violates 8 C.F.R. § 242.1 and is sufficient to constitute a constitutional violation of due process. Appellant relies in particular on § 242.1(c) which addresses the procedure to be followed in serving an Order to Show Cause:

> "When personal delivery of an order to show cause is made by an immigration officer, the contents of the order to show cause shall be explained and the respondent shall be advised that any statement he makes may be used against him."

8 C.F.R. § 242.1(c) (1990). Valdez, through testimony of his expert, asserts that § 242.1(c) applies throughout the deportation proceeding.

We find no basis for this contention. The I.N.S. Regulations clearly differentiate between the procedures applicable in personal service of an Order to Show Cause, and the procedural requirements applicable during the deportation hearing. Under 8 C.F.R. § 242.16 which is titled "Hearing":

> "The Immigration Judge shall advise the respondent of his right to representation, at no expense to the Government, ...

and require him to state then and there whether he desires representation; advise the respondent of the availability of free legal services programs ...; ascertain that the respondent has received a list of such programs, and a copy of Form I–618, Written Notice of Appeal Rights; ...."

8 C.F.R. § 242.16 (1990). The record shows that both immigration law judges fully complied with the requirements of § 242.16 during the hearing. There is no provision in § 242.16 which would require either immigration law judge to advise Valdez of his right to remain silent during the hearing.

Moreover, nothing in the record indicates that the Order to Show Cause was not complied with. The record shows that Valdez was served with an Order to Show Cause well before both hearings began. There is no testimony that the order did not comply with § 242.1(c).

Appellant also asserts that the failure to advise him of his right to remain silent is fundamentally unfair. Valdez argues that the Supreme Court's decision in *United States v. Mendoza–Lopez,* 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772, permits him to collaterally challenge the deportation hearings underlying his § 1326 conviction on due process grounds. While we agree with Valdez that the holding in *Mendoza–Lopez* permits a collateral challenge to a § 1326 conviction under some circumstances, we disagree with Valdez on the scope of the Court's holding.

In *Mendoza–Lopez* two aliens were tried and convicted on charges of violating 8 U.S.C. § 1326. On appeal, they collaterally attacked their earlier deportation hearing alleging that the immigration law judge accepted unknowing waivers of their right to judicial review. *Mendoza–Lopez,* 481 U.S. at 831, 107 S.Ct. at 2151. The Supreme Court agreed holding that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding." *Id.* at 837–38, 107 S.Ct. at 2154–55 (emphasis in original).

■ After *Mendoza–Lopez* an alien can collaterally challenge deportation hearings if the alien can show that the deportation hearings were fundamentally unfair and deprived the alien of the right to judicial review. *Mendoza–Lopez*, 481 U.S. at 838–39, 107 S.Ct. at 2155. Court decisions following *Mendoza–Lopez*, however, have split on whether a § 1326 conviction can be overturned based on a showing of either fundamental unfairness or lack of judicial review. *Compare United States v. Zaleta–Sosa*, 854 F.2d 48, 51 (5th Cir.) (finding that the two *Mendoza–Lopez* requirements are "distinct but related") *with United States v. Villa–Fabela*, 882 F.2d 434, 437 (9th Cir.) (allowing collateral attack if either fundamental unfairness or lack of judicial review is proven).

■ Valdez's claim that he must be informed of his right to remain silent at an immigration hearing fails under either approach. As we recently held in *Michelson v. Immigration and Naturalization Service*, 897 F.2d 465 (10th Cir.):

"A deportation proceeding is civil in nature, not criminal, and various constitutional protections associated with criminal proceedings therefore are not required."

*Id.* at 467 (citing *INS v. Lopez–Mendoza*, 468 U.S. 1032, 1038–39, 104 S.Ct. 3479, 3483, 82 L.Ed.2d 778). Valdez, therefore, does not have a right to a *Miranda* type warning in a deportation hearing. *United States v. Alderete–Deras*, 743 F.2d 645, 647 (9th Cir.). This is particularly true because an immigration hearing is civil in nature and Valdez's silence could be used against him. *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 154, 44 S.Ct. 54, 56, 68 L.Ed. 221 ("[T]here is no rule of law which prohibits officers charged with the administration of the immigration law from drawing an inference from the silence of one who is called upon to speak.").

■ Moreover, Valdez has not demonstrated that this lack of a *Miranda* type warning was fundamentally unfair or denied him effective judicial review. After *Michelson*, to establish fundamental unfairness arising to due process levels Val-

dez must show that he was prejudiced. *Michelson*, 897 F.2d at 468. Valdez asserts that the prejudice he suffered was the failure of the immigration law judges to follow federal regulations. Yet as discussed earlier, the record states that both immigration law judges fully complied with all required I.N.S. procedures during both hearings.

Valdez was also advised of his right to appeal the decisions in his deportation hearings. The record shows that at both hearings he was given a form outlining his right to appeal. Yet, appellant did not appeal or contest either hearing. Although *Mendoza–Lopez* holds that using civil proceedings as the basis for a criminal conviction may require additional due process, Valdez has not demonstrated either the fundamental unfairness or lack of judicial review necessary for such additional scrutiny.

Accordingly, the district court's judgment is AFFIRMED.