**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Bruce C. FOX, Defendant–Appellant.**

**No. 90–2048.**

United States Court of Appeals, Tenth Circuit.

April 18, 1991.

---

Peter Schoenburg, Asst. Federal Public Defender, Albuquerque, N.M., for defendant-appellant.

Before HOLLOWAY, Chief Judge, EBEL, Circuit Judge, and NOTTINGHAM *, District Judge.

NOTTINGHAM, District Judge.

Bruce C. Fox pled guilty to a charge of bank robbery, a violation of 18 U.S.C. § 2113(a) (1988). The district court placed him in the custody of the United States Bureau of Prisons for 37 months and required that he thereafter serve a term of three years on supervised release. Since the offense occurred in July of 1989, the court applied the federal sentencing guidelines in effect on that date. *See* United States Sentencing Commission, *Guidelines Manual* (1988).

Fox now appeals the district court's sentence on two grounds. First, he asserts that the district court improperly interpreted the robbery guideline by making a one-point upward adjustment in his offense level because he robbed a financial institution. Second, he maintains, the district court incorrectly determined that it did not have the power to depart below the applicable guideline range on the grounds urged by Fox. We conclude that the district court properly applied the robbery guideline. However, because we cannot tell from the record whether the district judge thought the applicable guidelines permitted a departure and merely exercised his discretion not to depart or whether he thought the applicable guidelines prohibited a departure on the grounds urged by Fox, we partially remand the cause to the district court so that the court's ruling on this issue can be clarified. *See United States v. Lowden,* 900 F.2d 213, 217–18 (10th Cir.) ("Lowden I"), *later opinion,* 905 F.2d 1448 (10th Cir.) ("Lowden II"), *cert. denied,* — U.S. —, 111 S.Ct. 206, 112 L.Ed.2d 166 (1990).

Rhonda P. Beckinoff, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., and Mary L. Higgins, Asst. U.S. Atty., on the brief), Albuquerque, N.M., for plaintiff-appellee.

* Honorable Edward W. Nottingham, United States District Judge for the District of Colorado, sitting by designation.

## FACTS

On July 14, 1989, Fox entered a First Interstate Bank in Albuquerque, New Mexico. He approached a teller and laid his right hand, which was inside a cigarette carton, on the counter. He gave the teller a note that read, "This is a Robbery no noise and I wont shoot—only large bills in an envelope. Give me five minutes and no shots will be fired! [sic]"

The teller put all her large bills, later determined to $1,000 in $50 bills, into an envelope. After she had done so, Fox said, "That's enough," or words of similar import. Fox then left with the envelope of money. The teller recognized Fox as a former customer and identified him as such to the police officers who came to investigate the robbery. The teller watched Fox walk to the lobby of a nearby motel after the robbery. Based on this information, the police apprehended Fox at the motel and recovered the $1,000.

## ANALYSIS

1. *the one-point upward adjustment for robbing a financial institution*

█ Fox argues that the district court incorrectly applied the robbery guideline, U.S.S.G. § 2B3.1 (1988), by making a one-point upward adjustment in his base offense level because he robbed a financial institution. To resolve the issue, we are required to interpret the guidelines in light of the commentary and to "exercise our judgment about the values underlying the legal principles involved." *United States v. Roberts*, 898 F.2d 1465, 1469 (10th Cir. 1990). As the inquiry is primarily a legal one, a *de novo* standard of review is appropriate. *Id.*

The guideline for robbery is section 2B3.1. U.S.S.G.App. A (1988) (statutory index). Subsection (a) establishes the base offense level. Subsection (b) describes various adjustments which may, if applicable, increase the offense level. One such adjustment requires increments in the offense level as the amount taken in the robbery increases. In making this adjustment, a sentencing court is instructed to "[t]reat the loss for a financial institution or post office as at least $5,000," U.S.S.G. § 2B3.1(b)(1) (1988), regardless of the amount actually taken. The effect of this language is that robbery of a financial institution requires at least a one-point upward adjustment in the base offense level. U.S.S.G. § 2B3.1(b)(1)(B) (1988) (increase offense level by one point if loss is between $2,501 and $10,000); U.S.S.G. § 2B3.1, comment (n. 2) (1988) ("robbery or attempted robbery of a bank or post office results in a minimum one-level enhancement").

Fox apparently concedes that the guideline language, read alone, requires the one-point adjustment made by the district court. His argument, rather, is premised on the following background commentary: "Banks and post offices carry a minimum 1 level enhancement for property loss because such institutions generally have more cash readily available, and whether the defendant obtains more or less than $2,500 is largely fortuitous." U.S.S.G. § 2B3.1, comment (backg'd) (1988). Reasoning from this comment that the one-point enhancement is inapplicable where the amount taken is not "largely fortuitous," Fox argues that he *purposely limited* the amount of money he took, by saying to the bank teller, "That's enough," after she had delivered her $50 bills. Because he deliberately controlled the amount of money taken, Fox concludes, the loss was not "fortuitous," and the one-point adjustment should not have been made.

Although it would be possible to reject Fox's highly-questionable factual assertion that his words and conduct demonstrate a deliberate limitation on the amount of money taken and to affirm the one-point enhancement as resting on a finding of fact which is not clearly erroneous, it is not clear that the district court made such a finding. We therefore choose to accept his factual premise and to decide the case on another ground. Even if Fox had told the teller to give him not one penny more than $1,000, however, we do not interpret the cited background commentary in the manner which he urges. The commentary amounts to nothing more than a back-

ground explanation of the reason for treating robbery of a financial institution as somewhat more serious than other robberies. It should not operate as a general warrant for the parties and a sentencing court to ignore the guideline's language and to conduct a factual inquiry in each case as to whether a defendant intended to limit the amount taken. If this had been the sentencing commission's intent, it could easily have said so. Instead, it has promulgated a guideline which clearly requires enhancement for bank robberies, regardless of the amount of money taken and regardless of a defendant's intent to limit the amount taken.

Our interpretation of the commentary in question, which is labeled as "background," is supported by the sentencing commission's own view concerning the significance of commentary. The commission has distinguished between "application notes" and "background" in the following language:

> The Commentary that accompanies the guideline sections may serve a number of purposes. First, it may interpret the guideline or explain how it is to be applied. Failure to follow such commentary could constitute an incorrect application of the guidelines, ... Second, the commentary may suggest circumstances which, in the view of the Commission, may warrant departure from the guidelines. Such commentary is to be treated as the legal equivalent of a policy statement. *Finally, the commentary may provide background information, including factors considered in promulgating the guideline or reasons underlying promulgation of the guideline. As with a policy statement, such commentary may provide guidance in assessing the reasonableness of any departure from the guidelines.*

U.S.S.G. § 1B1.7 (1988) (emphasis supplied). Consistent with this view, we have treated the "background" note in question as an explanation of the reason for the guideline. We give more weight to the "application note," which confirms the guideline's requirement that bank robbery "results in a minimum one-level enhance-ment." U.S.S.G. § 2B3.1, comment (n. 2) (1988).

2. *the district court's refusal to depart from the applicable guideline range*

█ Fox vigorously urged the district court to depart downward from the applicable guideline range. In support of his request, he cited a history of mental problems so serious that he was once institutionalized and later treated for paranoid schizophrenia. He also mentioned instances of alcohol and cocaine abuse. According to the clinical psychologist who examined him in preparation for the sentencing hearing, Fox's psychiatric condition began to deteriorate in 1989, and his alcohol and cocaine abuse increased. He lost his job, became increasingly unable to interact with people, and experienced more severe disorder in his thinking and judgment. Because of this mental disorder, Fox claims, he hatched a scheme to break into the federal penitentiary system. To execute this scheme, he robbed a bank at which he was well-known, not because he wanted the money, but because he knew that bank robbery was a federal crime. Once in the federal penitentiary system, Fox claims that he hoped to meet friends and interact with people.

Based on these facts, which the district court found to be undisputed, Fox argues that a departure is justified because he has presented a "mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." 18 U.S.C. § 3553(b) (1988). *See also* U.S.S.G. § 5K2.0, p.s. (1988). Recognizing that "[m]ental and emotional conditions *are not ordinarily relevant* in determining whether a sentence should be outside the guidelines," U.S.S.G. § 5H1.3, p.s. (1988) (emphasis supplied), Fox nonetheless argues that his psychiatric problems are so extraordinary as to merit a departure. Finally, Fox urges that a departure was required because he suffered from "significantly reduced mental capacity ... [which] contributed to the commission of the offense...." U.S.S.G. § 5K2.13, p.s. (1988). *Contra,*

*United States v. Borrayo*, 898 F.2d 91, 94 (9th Cir.1989) (robbery is a crime of violence, making section 5K2.13 inapplicable).

The district judge's sole response to Fox's request for a departure was the statement, "I don't believe that I can accede to your request. The Court finds that there is no need or—excuse me." Transcript of Sentencing Hearing at 13. The judge was thereupon interrupted by counsel and did not complete his thought. We cannot tell from this statement (1) whether the judge had reviewed the cited guidelines and interpreted them as depriving him of the power to depart on the grounds urged by Fox or (2) whether the judge thought the guidelines did give him the power to depart and nonetheless exercised his discretion not to depart.

The ambiguity in the judge's ruling is important because the question determines the scope of our review. If the judge interpreted the cited guidelines as depriving him of the power to depart, this legal interpretation of the guidelines would be subject to plenary review. *Lowden II*, 905 F.2d at 1449–50; *United States v. Davis*, 900 F.2d 1524, 1530 n. 7 (10th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 155, 112 L.Ed.2d 121 (1990) (*dictum*). If the judge interpreted the guidelines as authorizing departure and simply chose not to depart, we would lack jurisdiction to review this discretionary decision. *E.g., United States v. Soto*, 918 F.2d 882, 883–84 (10th Cir.1990) (collecting cases from this and other circuits). We therefore cannot undertake a review of the decision until the ambiguous ruling is clarified. Accordingly, the cause is partially remanded to the district court, and the district judge shall clarify whether, in sentencing the defendant, he declined to depart from the guidelines because he felt he had no authority to do so or whether it was because he simply exercised his discretion not to do so. The clerk of the district court shall transmit the clarifying document to the court of appeals forthwith. This court retains jurisdiction of the appeal.