**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Arturo LOPEZ–VASQUEZ, Defendant–Appellant.**

**No. 92–50271.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 8, 1993.

Decided Feb. 8, 1993.

John Lanahan, Federal Defenders of San Diego, Inc., San Diego, CA, for defendant-appellant.

Sherri L. Walker and Jay Alvarez, Asst. U.S. Attys., San Diego, CA, for plaintiff-appellee.

Before: BROWNING, POOLE and NOONAN, Circuit Judges.

## PER CURIAM:

### I.

Arturo Lopez–Vasquez was deported May 3, 1991. On August 28, 1991, he attempted to enter the United States from Mexico through a border patrol checkpoint. He told border patrol agents he was a United States citizen but had no identification because his wallet had been stolen. Lopez–Vasquez consented to a search of his bag and agents found a card with the name "Arturo Vasquez." A computer search under that name revealed an extensive criminal history and prior deportations, including the deportation of May 3. Lopez–Vasquez was arrested and indicted for reentry after deportation in violation of 8 U.S.C. § 1326. In a pretrial motion, Lopez–Vasquez contended his May 3 deportation could not serve as the basis for a conviction under § 1326 because his waiver of his right to appeal the deportation order was not knowing and intelligent. The court denied the motion. Lopez–Vasquez entered a conditional plea of guilty, preserving his right to appeal the denial of his motion.

### II.

A claim that a defect in a prior deportation order precludes reliance on the deportation in a prosecution for violation of 8 U.S.C. § 1326 presents "mixed questions of law and fact requiring us to exercise judgment about legal principles. Accordingly, we review [Lopez–Vasquez's] claims *de novo." United States v. Proa–Tovar,* 975 F.2d 592, 594 (9th Cir.1992) (en banc).

### A.

Lopez–Vasquez was deported from the United States on May 3, 1991 after a group hearing with at least eleven other aliens. Although the immigration judge spoke to Lopez–Vasquez through an interpreter, he did not ask him, or any other member of the group, personally whether he wished to appeal his deportation.[1] Instead, he addressed them as a group:

Q: Mr. Lopez, do you want to get the free lawyer?

---

1. The total exchange between Lopez–Vasquez and the immigration judge follows:

THE COURT: Please answer together gentlemen, do you all understand the decision in your case?

ANSWER: Yeah!

THE COURT: [If] you accept the decision now, it is final and you will be deported to Mexico tonight. But you do not have to accept deportation. If you think it is wrong or unjust in your case for any reason, you can appeal the case to the higher court. Appeal is the legal way of saying to send the case to the higher court for study and review. Now all of you should have in your possession the Spanish language form I–648A. Regardless of the [inaudible] If you do not have a form please stand now. Let the record show that no one is standing.

Gentlemen, this appeal [form] explains about appeal like I am doing. And [inaudible] to make an appeal that cost money, but forget about that if you have no money; you can file the appeal free of charge. I [will] give you help with the paper work. Even if you do not know at this time if you want to appeal, the law says that you can reserve your right to appeal for the next 10 days and think about it.

Gentlemen, if any of you do not understand about appeal, or if you have any questions about appeal, please stand now so that I can talk to you. Let the record show that no one is standing. If any of you want to appeal your case to the higher court, or if you want to reserve your right to appeal for 10 days and think about it, please stand so that I can talk to you about that. Again, let the record reflect that no one is standing.

.... There's no appeal and so the decision [inaudible] is final. I am going to give you and the immigration service attorney a copy of the decision. And I do wish all of you good luck for the future. The hearing for you is finished.

### B.

■ The government bears the burden of proving Lopez–Vasquez waived his right to appeal the order for his deportation. *See Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977) ("it [is] incumbent upon the State to prove 'an intentional relinquishment or abandonment of a known right or privilege.' ") (citation omitted); *United States v. Gasca–Kraft*, 522 F.2d 149, 152 (9th Cir.1975) (government bears burden of proving beyond a reasonable doubt that underlying deportation was lawful). Waiver is " 'an intentional relinquishment or abandonment of a known right or privilege.' Courts should 'indulge every reasonable presumption against waiver,' and they should 'not presume acquiescence in the loss of fundamental rights.' " *Barker v. Wingo*, 407

A: No.

....

Q: Mr. Lopez, did you enter without inspection January 9 of this year?

[no answer indicated]

Q: Sir, you are charged with entering the country without inspection, do you understand this charge?

[no answer indicated]

Q: Is this charge true in your case?

[no answer indicated]

Q: The second charge of deportability is this drug charge. I want to ask you on October 2, 1989, were you convicted in Superior Court in Los Angeles for possession of heroin?

A: Yes.

Q: Well, they have a technical error on this drug charge of deportability. This is going to cause great trouble for me until the Immigration Service can become comfortable with it. But I'm going to sustain only the entry inspection charge in your case. Tell, sir, have you anything for your defense?

[no answer indicated]

Q: What was your first year here?

A: '71

Q: What family have you here?

A: All of them.

Q: Well, who?

A: My mother, my wife and my kids.

Q: Your mother and your wife, are they legal? Immigrants?

[no answer indicated]

Q: Why aren't you an immigrant through them?

A: I never arrange to file the papers [inaudible]

Q: Well, did you apply for immigrant status in 1971?

[no answer indicated]

Q: What happened? You just filed the papers and forgot about them?

[no answer indicated]

Thank you sir, sit down.

U.S. 514, 525, 92 S.Ct. 2182, 2189, 33 L.Ed.2d 101 (1972) (citations omitted).

■ Although we have held the government may conduct group deportation hearings if the proceedings comport with due process, *United States v. Nicholas–Armenta*, 763 F.2d 1089, 1091 (9th Cir.1985), we have never held that due process is satisfied by a mass silent waiver of the right to appeal a deportation order.

The government argues that requiring a detained alien who wishes to assert his right to appeal to stand for questioning provides sufficient input to ensure the waiver was knowing and intelligent. We disagree. The immigration judge made no effort to determine whether Lopez–Vasquez individually wished to waive his right to appeal, and the mass waiver by silence made it impossible to determine whether he made a voluntary and intelligent decision to do so.[2] Mass silent waiver creates a risk that individual detainees will feel coerced by the silence of their fellows. The immigration judge's directive that to preserve the right to appeal a detainee must stand up "so that I can talk to you about that" did nothing to lessen this risk. Indeed, it tended to stigmatize detainees who wished to appeal and to convey a message that appeal was disfavored and contingent upon further discussion with the immigration judge.

The government also notes the immigration judge explained the right to appeal, and Lopez–Vasquez was provided with a form explaining his right to an appeal in Spanish. These facts might support an argument that Lopez–Vasquez knew what his right to an appeal was, but they fail to demonstrate that Lopez–Vasquez's silent waiver of the right was itself "considered" and "intelligent." *United States v. Mendoza–Lopez*, 481 U.S. 828, 840, 107 S.Ct. 2148, 2156, 95 L.Ed.2d 772 (1987).[3]

We conclude mass silent waiver impermissibly "presume[s] acquiescence" in the loss of the right to appeal and fails to overcome the "presumption against waiver." *See Barker*, 407 U.S. at 525, 92 S.Ct. at 2189.[4] We reach the same conclusion in *United States v. Gonzalez–Mendoza*, 985 F.2d 1014, 1017 (9th Cir.1993), also decided today.

### III.

In reliance upon the panel opinion in *United States v. Proa–Tovar*, 945 F.2d 1450 (9th Cir.1991), *superseded by* 975 F.2d 592 (9th Cir.1992) (en banc), Lopez–Vasquez made no effort to show prejudice from the failure to appeal or to argue the issue of prejudice in the district court or on appeal. After the parties filed their opening briefs in this case, the en banc court superseded the panel opinion and held that

---

2. The government misinterprets the record in at least one respect by stating that "appellant, along with the group, state[d] "yeah" in response to the immigration judge's inquiry as to whether they understood the appellate process." In fact, the group responded to the question whether each understood the *decision* in his case, and the record does not reveal whether Lopez–Vasquez joined in the response.

3. The government also argues Lopez–Vasquez ought to have known of his right to appeal because he is of average intelligence and competence, he never demonstrated confusion during the hearing, and his criminal record and prior deportations demonstrate his familiarity with deportation proceedings and the right to appeal. These arguments miss the point. Lopez–Vasquez apparently knew what an appeal was, and was aware he had some right to an appeal. However, the immigration judge's comments and the requirement that detainees stand if they

wished to preserve their rights may have conveyed the message that detainees should accept their deportation and not appeal.

4. The cases cited by the government from other circuits do not support its argument that a mass waiver by silence of the right to appeal comports with due process. In *United States v. Holland*, 876 F.2d 1533 (11th Cir.1989), the court ultimately did not decide whether waiver of the right to appeal was knowing and intelligent because it found no prejudice even if the waiver were invalid. In *United States v. Zaleta–Sosa*, 854 F.2d 48 (5th Cir.1988), the court upheld a waiver given during a personal one-on-one exchange between the detainee and the immigration judge. *See also United States v. Villa–Fabela*, 882 F.2d 434 (9th Cir.1989) (upholding waiver where defendant expressly waived appeal in one-on-one conversation with immigration judge).

"[a] defendant who seeks to exclude evidence of a deportation order in a prosecution under 8 U.S.C. § 1326 must do more than demonstrate deprivation of the right to a direct appeal from that order. The defendant also bears the burden of proving prejudice." *Proa–Tovar*, 975 F.2d at 595. We requested supplemental briefs on the impact of the en banc decision on this case.

The government argues Lopez–Vasquez "had no relief available to him from his inevitable deportation" because his prior criminal convictions make him ineligible for suspension of deportation, voluntary departure, or lawful admission for permanent residence.[5] Lopez–Vasquez argues remand is necessary because he had no reason to present evidence of prejudice to the district court.

Because neither Lopez–Vasquez nor the district court considered the question of prejudice and the record is incomplete, we are unable to determine whether Lopez–Vasquez can provide "some concrete evidence indicating that the violation of [his right to appeal] actually had the potential for affecting the outcome of [the] deportation proceedings." *U.S. v. Cerda–Pena*, 799 F.2d 1374, 1379 (9th Cir.1986). Accordingly, we remand to the district court for consideration of this issue.[6]

Remanded.

---

5. The government claims Lopez–Vasquez has been convicted six times since 1978 for theft of property, driving under the influence, burglary, and possession of a controlled substance. An alien is statutorily ineligible for suspension of deportation if he cannot show good moral character, and no person can make such a showing if he has been imprisoned for more than 180 days over the preceding seven years. Voluntary departure requires a showing of good moral character over the previous five years. Lawful admission for permanent residence is not available to aliens who have a committed crime of moral turpitude, which includes theft. *Villa–Fabela*, 882 F.2d at 440–41.

6. We note that if Lopez–Vasquez can make a prima facie showing of prejudice, "the burden then shifts to the government to show that the violation could not have changed the outcome of the deportation proceedings." *Id.*