**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jose Luis MENDOZA–LOPEZ,**
**Defendant–Appellant.**

No. 93–2032.

United States Court of Appeals,
Tenth Circuit.

Oct. 25, 1993.

Teresa E. Storch, Asst. Federal Public Defender, Albuquerque, NM, for defendant-appellant.

Louis E. Valencia, Asst. U.S. Atty. (Don J. Svet, U.S. Atty., with him on the brief), Albuquerque, NM, for plaintiff-appellee.

Before McKAY, Chief Judge, GOODWIN * and SEYMOUR, Circuit Judges.

McKAY, Chief Judge.

Defendant–Appellant Jose Luis Mendoza–Lopez appeals his conviction under 8 U.S.C. § 1326(b)(1) for re-entering the United States after having been deported.

In May 1986, a California court convicted Mr. Mendoza of possession of narcotics and sentenced him to a prison term, at the end of which he was paroled into custody of the Immigration and Naturalization Service. A deportation hearing took place on February 27, 1987, resulting in Mr. Mendoza's deportation. Mr. Mendoza immediately returned to the United States and was re-arrested soon thereafter for a parole violation. Another deportation hearing ensued on August 7, 1987, resulting in Mr. Mendoza's second deportation. Again, he immediately returned to the United States. In June 1992, he was arrested on the current charge of re-entry after deportation.

* Honorable Alfred T. Goodwin, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

Mr. Mendoza has apparently been a legal permanent resident of the United States since his arrival in this country at the age of eight months. He received an alien registration card when he was fourteen. Despite his legal status, and apparently in reliance upon the advice of other detainees, Mr. Mendoza deliberately concealed this important information from the Immigration Law Judge at each deportation hearing. At each hearing, the ILJ specifically informed Mr. Mendoza individually and as part of the group of the need to disclose any defense to the deportation proceedings, including the existence of any immigration papers, or any belief that he had a legal right to be in the United States. In response to the ILJ's questions on these points, Mr. Mendoza replied both individually and as a member of the group that he had never received any immigration papers and had no legal right to be in the United States. Mr. Mendoza further stated, again untruthfully, that the only family he had in the United States were some cousins. At trial, Mr. Mendoza testified that these misstatements were the result of his desire to be quickly deported so that he would be released from the allegedly "horrible" conditions at the detention center as quickly as possible.

The ILJ also clearly informed the detainees at each hearing of their right to appeal if they thought that his decision was incorrect, and told them that he would assist them in filing the appropriate paperwork to do so. The ILJ indicated that any appeal would not be immediate, and that any detainee would be able to stay at the detention center pending the appeal. The ILJ requested anyone who wished to appeal to stand; nobody did.

On appeal, Mr. Mendoza raises two constitutional claims attacking the validity of the deportation hearings. Mr. Mendoza argues that the two deportation hearings violated his constitutional right to due process because the ILJ failed to inform him of his apparent eligibility for a waiver of deportation under 8 U.S.C. § 1182(c). Mr. Mendoza also argues that his waiver of his right to appeal the ILJ's decision was not knowing and voluntary.[1] Mr. Mendoza thus argues that neither deportation can form the basis for his conviction under § 1326.

■ A collateral attack on the constitutionality of deportation proceedings underlying a conviction under § 1326 is a mixed question of law and fact which we review de novo. *United States v. Valdez*, 917 F.2d 466, 468 (10th Cir.1990). We have previously noted that the circuits are split over what a defendant seeking to overturn a conviction under § 1326 must show; some require a showing of either fundamental unfairness in the deportation proceeding or a lack of judicial review, while others require the defendant to show both. *See id.*, 917 F.2d at 469. As in *Valdez*, we conclude that Mr. Mendoza's claims must fail under either standard.

■ To establish fundamental unfairness sufficient to constitute a violation of due process, Mr. Mendoza must show that he suffered prejudice from the alleged unfairness. *Michelson v. INS*, 897 F.2d 465, 468 (10th Cir.1990). Mr. Mendoza predicates his claim of fundamental unfairness upon his insistence that the INS had an affirmative duty to search its files for any information pertaining to Mr. Mendoza's potential eligibility for a waiver of deportation and to report that information to the ILJ presiding at the deportation hearing.[2]

■ The ILJ's duty to inform an alien of his apparent eligibility for discretionary relief from deportation is triggered only after the alien has provided information sufficient to support such a duty. The ILJ is not required to engage in hypothesizing as to what theories, if any, might be available to

---

1. Mr. Mendoza also argues that he did not make a considered waiver of his right to appeal because he was unaware of his possible eligibility for a waiver of deportation. In light of our holding on the due process claims, this theory is without merit.

2. Mr. Mendoza claims for the first time on appeal that the INS lacked a prima facie case for

Mr. Mendoza's deportation hearing. We do not address this issue, which was not considered and ruled on by the district court. *See Farmers Ins. Co. v. Hubbard*, 869 F.2d 565, 570 (10th Cir. 1989). Accordingly, Mr. Mendoza's claims that he was coerced into admitting his alienage by the allegedly improper deportation charges must also fail.

find an alien eligible for discretionary relief. *Id.* at 468. Moreover, the ILJ repeatedly gave Mr. Mendoza the opportunity to notify him of his claim to permanent resident status, which opportunity was dependent upon information unequivocally within Mr. Mendoza's knowledge at the time. Under these circumstances, we cannot hold that the ILJ failed in his duty to inform Mr. Mendoza of his apparent eligibility for relief. Nor can we conclude that Mr. Mendoza was prejudiced by any allegedly improper actions of the INS. Any prejudice Mr. Mendoza may have suffered was the result of his willful misstatements to the ILJ. Accordingly, we hold that Mr. Mendoza's claims cannot be upheld under the fundamental unfairness standard.

■ Nor can we conclude that the ILJ's use of a mass waiver by silence unconstitutionally denied Mr. Mendoza his right to judicial review of the deportation decision. The Ninth Circuit has found such waivers to violate due process where they "made it impossible to determine whether [the defendant] made a voluntary and intelligent decision" to waive his right to appeal. *United States v. Lopez–Vasquez,* 985 F.2d 1017, 1020 (9th Cir.1993), *as amended,* 1 F.3d 751 (1993).

■ In this case, we hold that it is not impossible to determine whether the waiver was intelligently and voluntarily made. We conclude that Mr. Mendoza's decision to waive his right to appeal was the voluntary and intelligent result of his asserted desire to be released from the detention center as soon as possible. Accordingly, we hold that the deportation proceeding did not improperly deny Mr. Mendoza his right to judicial review of the deportation order.

Finally, Mr. Mendoza urges this court to remand the matter to the district court for clarification on the sentencing decision. Mr. Mendoza claims that the record is unclear as to whether the district court decided not to depart from the Guidelines on the merits, or whether the court believed that it lacked the authority to grant such a departure.

■ Where a district court in the exercise of its discretion decides not to depart from the Federal Sentencing Guidelines, an appellate court lacks jurisdiction to review that discretionary decision. *United States v. Fox,* 930 F.2d 820, 824 (10th Cir.1991). However, where the district court decides that it lacks the discretion to depart from the Guidelines, we review that decision de novo. *United States v. Spedalieri,* 910 F.2d 707, 710 (10th Cir.1990). If the district court's ruling is unclear as to whether the court believed it had the discretion to depart, we must remand for clarification. *See United States v. Lowden,* 900 F.2d 213, 217–18 (10th Cir.), *cert. denied,* 498 U.S. 876, 111 S.Ct. 206, 112 L.Ed.2d 166 (1990). On the record before us, we do not believe remand to be necessary.

■ Mr. Mendoza raised three grounds for a downward departure: his efforts at drug rehabilitation; his "extraordinary" family circumstances; and the "unduly harsh consequences" of imprisonment for deportable aliens. At the sentencing hearing, counsel for Mr. Mendoza restated these reasons for requesting a departure. The district court responded as follows: "I would inform you that I see no grounds in this case for a downward departure.... I can't abide [the] request [for a departure]." (R.Vol. IV at 6–7.) The court then remarked upon the defendant's prior criminal history, history of drug abuse, and previous deportations, concluding that in light of these facts, "[t]he sentence imposed will reflect the sentencing goals of punishment, deterrents [sic] and protection of the public." *Id.* at 7–8. Taken as a whole, we believe that these statements indicate that the district court considered Mr. Mendoza's arguments on the merits, and did not refuse to grant the departure in the belief that it had no authority to do so. We therefore have no jurisdiction to review the district court's exercise of its discretion in denying a downward departure.

■ Moreover, with regard to the first ground raised to support downward departure, Mr. Mendoza's efforts at drug rehabilitation, we note that, while this court had not yet addressed the issue at the time of the sentencing hearing or at the time briefs were submitted in this case, the question is no

longer open. In *United States v. Ziegler*, 1 F.3d 1044 (10th Cir.1993), this court expressly rejected the possibility that efforts at drug rehabilitation may justify a downward departure beyond that authorized by Section 3E1.1's provision on acceptance of responsibility, even in extraordinary circumstances. Thus, even assuming that the district court's pronouncement was ambiguous, we hold that such ambiguity does not require remand and clarification, because it is now clear that the district court may not consider rehabilitative efforts as grounds for a separate downward departure.

Second, we note that this circuit approved a downward departure for extraordinary family circumstances in 1991. *United States v. Pena*, 930 F.2d 1486, 1494–95 (10th Cir. 1991). The sentencing hearing in this case was held in January of 1993. There is no reason to presume that the district court was unaware of the *Pena* decision. Accordingly, there is no reason for us to conclude that the district court did not consider this ground for departure on the merits.

■ With respect to the third ground for departure urged upon the court, the "unduly harsh consequences of imprisonment for deportable aliens," we note that after the submission of briefs in this matter, the Second Circuit vacated and remanded the sole decision Mr. Mendoza relied upon as grounds for a downward departure. *United States v. Restrepo*, 999 F.2d 640 (2d Cir.1993). We agree with the well-reasoned decision of the Second Circuit. Accordingly, even if we were to conclude that the district court's decision on this ground was ambiguous, we would hold that there is no cause for remand.

We therefore deny Mr. Mendoza's request for remand and clarification. The district court's decision is AFFIRMED.