91 F.3d 145
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joel Alejandro GALAVIZ-GALAVIZ, Defendant-Appellant,
 No. 95-1530.
 United States Court of Appeals, Sixth Circuit.
 July 23, 1996.
 
 Before: KENNEDY and BOGGS, Circuit Judges; RUSSELL, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant was convicted of re-entering the United States after being deported, a violation of 8 U.S.C. § 1326(a), (b)(2). On appeal, defendant argues that the administrative hearing leading to his deportation was fundamentally unfair and deprived him of due process such that it cannot satisfy a material element of the conviction. For the following reasons, we AFFIRM.
 
 I.
 
 2
 Defendant Joel Alejandro Galaviz-Galaviz was born on July 27, 1974 in Mexico and came to the United States when he was only a few days old. He became a lawful permanent resident of this country on December 1, 1990, and resided in Michigan.
 
 
 3
 On July 6, 1992, defendant was found guilty of attempted delivery of marijuana which, at the time of his conviction, was a felony with a maximum penalty of four years imprisonment and a $4000 fine. Based on this conviction, defendant was ordered deported from the United States to Mexico, following a deportation hearing before an Immigration Law Judge ("ILJ") in Oakdale, Louisiana on November 9, 1993. Defendant was in fact deported on November 24, 1993, from Brownsville, Texas.
 
 
 4
 Sometime thereafter, immigration authorities discovered that defendant had returned to the United States without the express prior consent of the Attorney General. Accordingly, a grand jury indicted defendant on one count of illegally re-entering the United States after being deported, a violation of 8 U.S.C. § 1326(a), (b)(2).[1] At the ensuing bench trial, defendant conceded each of the material elements of the crime, but collaterally attacked the November 9, 1993 deportation hearing on the basis that it was fundamentally unfair and therefore could not be used to support a criminal conviction under the Supreme Court's decision in United States v. Mendoza-Lopez, 481 U.S. 828 (1987). The District Court listened to a tape recording of defendant's deportation hearing, concluded that it comported with due process, and found the defendant guilty as charged. Subsequently, the District Court sentenced defendant to fifty-one months imprisonment. Defendant now appeals.
 
 II.
 
 5
 Defendant's sole argument on appeal is that his November 9, 1993 deportation hearing was fundamentally unfair and therefore cannot support the deportation that is a requisite element of a § 1326 violation. Specifically, defendant alleges (1) that he was prejudicially deprived of his right to contest deportation and his right to counsel at the hearing through the coercion of an unnamed I.N.S. official and (2) that he was prejudiced by the INS's failure to advise him of potential discretionary relief from deportation.
 
 
 6
 The United States argues that defendant's deportation hearing comported with due process because he understood the nature of the proceedings, voluntarily declined the opportunity to seek the assistance of counsel, acknowledged his right to appeal the deportation order, and was not prejudiced because he was statutorily ineligible for discretionary suspension of deportation.
 
 
 7
 We review the District Court's factual findings for clear error, while the ultimate legal determination of whether the facts as found by the District Court establish a constitutional violation is reviewed de novo. See United States v. Torres-Sanchez, 68 F.3d 227, 229 (8th Cir.1995).
 
 III.
 
 8
 In United States v. Mendoza-Lopez, 481 U.S. 828 (1987), the Supreme Court held that a defendant prosecuted for illegal re-entry following deportation may collaterally attack the deportation order underlying the offense. In Mendoza-Lopez, respondents were ordered deported following a group deportation hearing, but were not adequately informed of their rights either to apply for a suspension of deportation or to appeal the ILJ's decision. The government conceded that the deportation hearing was fundamentally unfair, but argued that no collateral attack should be permitted. Id. at 839-40. The Supreme Court disagreed, stating that "where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense." Id. at 838 (footnote omitted). A collateral challenge to the deportation hearing, the Court held, provided the necessary alternative means. Id. at 839. Thus, the Court concluded that "[b]ecause respondents were deprived of their rights to appeal, and of any basis to appeal since the only relief for which they would have been eligible was not adequately explained to them, the deportation proceeding in which these events occurred may not be used to support a criminal conviction." Id. at 842.[2]
 
 
 9
 The Circuit Courts of Appeals unanimously interpret Mendoza-Lopez as allowing a defendant's collateral challenge to a deportation hearing where defendant can show that (1) he was effectively deprived of the right to judicial review and (2) the hearing was fundamentally unfair in the sense that defendant was prejudiced by the procedural errors. See United States v. Torres-Sanchez, 68 F.3d 227, 230 (8th Cir.1995); United States v. Leon-Leon, 35 F.3d 1428, 1431 (9th Cir.1994); United States v. Espinoza-Farlo, 34 F.3d 469, 471 (7th Cir.1994); United States v. Meraz-Valeta, 26 F.3d 992, 998 (10th Cir.1994); United States v. Fares, 978 F.2d 52, 56-57 (2d Cir.1992); United States v. Encarnacion-Galvez, 964 F.2d 402, 406 (5th Cir.), cert. denied, 506 U.S. 945 (1992); United States v. Holland, 876 F.2d 1533, 1536 (11th Cir.1989). Applying this framework to the case at bar, it is apparent that defendant was neither deprived of his right to judicial review nor deported as a result of a fundamentally unfair proceeding.
 
 
 10
 We note at the outset that the deportation hearing was conducted through a Spanish interpreter because defendant, who speaks and understands both English and Spanish, indicated that he understood Spanish better. Further, the ILJ informed defendant of his right to be represented by counsel at the hearing and defendant was provided with a list of attorneys who might have represented him at little or no cost. Defendant, however, declined to seek counsel. The ILJ also apprised defendant of his right to present evidence and challenge the case of the government, but defendant declined to challenge the government's evidence and presented no evidence on his own behalf. Finally, defendant acknowledged several times throughout the hearing that he understood the proceedings and asked questions of the judge when he did not.
 
 
 11
 Specifically with regard to his right to appeal, the transcript of the audio tape of the deportation hearing clearly demonstrates that the ILJ notified defendant of his appellate rights sufficient to satisfy due process.[3] See United States v. Escobar-Garcia, 893 F.2d 124, 126 (6th Cir.), cert. denied, 494 U.S. 1070 (1990). The transcript of the audio tape further reveals that defendant understood his right to appellate review and executed a considered and intelligent waiver of that right. Thus, defendant was not deprived of his right to judicial review of the deportation order. See United States v. Mendoza-Lopez, 481 U.S. 828, 840 (1987).
 
 
 12
 Further, defendant's deportation hearing was not fundamentally unfair. The District Court squarely discredited defendant's allegation of coercion, which was only brought to light on the eve of defendant's criminal trial, well over a year after it was alleged to have occurred. This is a finding of fact that is not clearly erroneous.[4] Defendant also argues that he may have qualified for a discretionary exception to deportation pursuant to 8 U.S.C. § 1182(c) and 8 C.F.R. § 242.17 (1987). The ILJ is not required to explore what possible theories might be available to find an alien eligible for discretionary relief. United States v. Mendoza-Lopez, 7 F.3d 1483, 1485-86 (10th Cir.1993). Failure to do so did not render the deportation hearing fundamentally unfair. Accordingly, because defendant was neither deprived of his right to judicial review nor deported as a result of a fundamentally unfair proceeding, the deportation order resulting from defendant's November 9, 1993 deportation hearing was properly used to establish an element of defendant's § 1326 conviction.
 
 IV.
 
 13
 For the foregoing reasons, the decision of the District Court is hereby AFFIRMED.
 
 
 
 *
 The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation
 
 
 [1]
 Section 1326 states, in pertinent part:
 (a) [A]ny alien who--
 (1) has been arrested and deported or excluded and deported, and thereafter
 (2) enters, attempts to enter, or is at any time found in, the United States [unlawfully],
 * * *
 (b) [i]n the case of any alien ...--
 (2) whose deportation was subsequent to a conviction for commission of an aggravated felony, ... shall be fined[,] imprisoned not more than 20 years, or both.
 8 U.S.C. § 1323(a), (b)(2).
 
 
 [2]
 Though we have recognized that Mendoza-Lopez "appl[ies] to cases which involve fundamentally unfair proceedings before an administrative agency," United States v. Escobar-Garcia, 893 F.2d 124, 126 (6th Cir.), cert. denied, 494 U.S. 1070 (1990), we have yet to apply that aspect of the Court's holding
 
 
 [3]
 Explaining defendant's appellate rights to him, the judge stated:
 Q: There is a higher court than this one in the area of our capital city, Washington D.C., and its purpose is to review the decisions of judges such as myself to see if they are correct. If you were to appeal, then your case would be sent to that higher court, and they would review the decision that I have made. Now do you understand what it is to appeal?
 A: Yes.
 Q: Do you wish to appeal?
 A: No.
 Q: One last question: Have you understood everything that has been said to you in Spanish by the interpreter?
 A: Yes.
 
 
 [4]
 The District Court made this factual finding, in part, on the basis that defendant was not a reliable witness, as demonstrated by the fact that much of defendant's testimony at his criminal trial with regard to what happened at his deportation hearing conflicted with the audiotape of that hearing