**UNITED STATES of America,
Plaintiff,**

v.

**Ruben MARTINEZ–VILLALVA,
Defendant.**

**No. Crim.A.99–CR–296–B.**

United States District Court,
D. Colorado.

Dec. 28, 1999.

Gregory Goldberg, Assistant U.S. Attorney, Denver, CO, for Plaintiff.

Warren Richard Williamson, Federal Public Defender's Office, Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendant, Ruben Martinez–Villalva, moves for further discovery, to suppress statements, and to dismiss the indictment. The Government states that it has provided the further information sought by Defendant, and opposes the latter two motions. The motions are adequately briefed and the parties presented oral argument on December 28, 1998. For the reasons set forth below, I deny as moot the motion for further discovery, and deny the other two motions.

### I.

Defendant has been convicted of state law crimes eight times, and deported by the Immigration and Naturalization Services (INS) five times. Defendant's fourth deportation resulted from an order issued by an immigration judge on August 29, 1997 (1997 Order) following a group hearing (1997 hearing). The documentation of the deportation proceedings, and a transcript of the hearing, show that Defendant waived his right to appeal the 1997 Order. The INS removed Defendant on September 3, 1997.

Defendant subsequently returned to the United States in September 1997. After convictions on simple and third degree assault in July 1998 and January 1999, respectively, the INS reinstated the 1997 Order on February 1, 1999, and Defendant waived his right to "contest th[e] determination by making a written or oral statement to an immigration officer." Prior to effecting his waiver, an INS agent informed Defendant in Spanish of his right to appeal. The INS removed Defendant on February 3, 1999.

Defendant returned once again to the United States and, on July 28, 1999, was convicted on another assault charge. The INS reinstated the 1997 Order again on August 27, 1999. After being informed in Spanish of his right to appeal the INS action, Defendant waived that right. On September 15, 1999, the Government filed an indictment charging a violation of 8 U.S.C. § 1362(a), and a notice of intent under 8 U.S.C. § 1362(b) to seek an enhanced sentence of not more than twenty years.

## II.

### A.

Defendant seeks to collaterally attack his 1997 Order. Specifically, Defendant claims that the 1997 hearing violated the Due Process clause of the Fifth Amendment because Defendant was not adequately advised of his right of appeal, and consequently did not knowingly and intelligently waive that right. Defendant concludes that the indictment must be dismissed.

■ In order to collaterally attack the 1997 deportation hearing and Order, Defendant must prove that: (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d). Under the constitutional standard, Defendant must show that the deportation hearing was both fundamentally unfair, and deprived him of his right to judicial review. *See U.S. v. Aranda–Hernandez*, 95 F.3d 977, 980 (10th Cir. 1996); *U.S. v. Meraz–Valeta*, 26 F.3d 992, 998 (10th Cir.1994); *U.S. v. Valdez*, 917 F.2d 466, 469 (10th Cir.1990). In order to prove fundamental unfairness, Defendant must prove that he was prejudiced by showing that but for his waiver of his right of appeal, "the outcome of his case would have been different." *Meraz–Valeta*, 26 F.3d at 998. *See Aranda–Hernandez*, 95

F.3d at 980; *Valdez*, 917 F.2d at 469. Here, the Government does not dispute that Defendant exhausted all administrative remedies available to him. *See Government's Response* at 6, n. 5 ("Although Defendant must also show that he has exhausted all available administrative remedies, the government does not dispute that he has."). Thus, my analysis concerning the appropriateness of Defendant's collateral attack on the underlying deportation order is the same whether I conduct a statutory or constitutional analysis. *See U.S. v. Wittgenstein*, 163 F.3d 1164, 1170 (10th Cir.1998) (holding that the analyses are the same under these circumstances).

■ During the motions hearing, defense counsel conceded that Defendant could not prove prejudice according to Tenth Circuit precedent. Nevertheless, Defendant claims that the above Tenth Circuit authority establishing the prejudice requirement misconstrues the Supreme Court case that established the general right of defendants in 8 U.S.C. § 1326 prosecutions to collaterally attack the underlying deportation order. *See U.S. v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). He thus argues that "there is no—or should not be any—such requirement under relevant Supreme Court authority." *Defendant's Supplemental Brief* at 4. Alternatively, Defendant argues that if prejudice is a factor in determining whether a collateral attack is permissible, the burden should be on the Government to prove that any Constitutional error was harmless beyond a reasonable doubt.

Defendant asks that I overturn settled Tenth Circuit authority. Under any reasonable interpretation of my role as a District Court Judge, I cannot do so. Moreover, I note that at least one of Defendant's arguments has been presented to the Tenth Circuit. *See U.S. v. Sosa–Rubio*, 1999 WL 429873 (10th Cir.1999) (unpublished opinion). The *Sosa–Rubio* court stated that because it was not an *en banc* panel, it did not have the authority

to overturn "a host of this court's prior decisions interpreting *Mendoza–Lopez*." *Id.* at *1. If the *Sosa–Rubio* court did not have the authority to overturn Tenth Circuit authority, I certainly do not.

■ Even if the Government were required to prove that any Constitutional infirmities in the 1997 hearing were harmless beyond a reasonable doubt, I would not dismiss the indictment. Assuming that Defendant improperly waived his right to appeal, any appeal in this case would not have reached a contrary outcome. Because Defendant admitted at the hearing that he had illegally reentered the United States, and the Government merely reinstated Defendant's prior order of removal, he was not eligible for any form of relief from deportation. *See* 8 U.S.C. § 1231(a)(5) ("If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, [and] the alien is not eligible and may not apply for any relief under this chapter"). Any Constitutional infirmity in the 1997 hearing, therefore, was harmless beyond a doubt.

■ Similarly, whether Defendant concedes it or not, he cannot prove prejudice. Contrary to Defendant's assertion, a Spanish interpreter participated in the 1997 hearing and interpreted everything said by the judge, including his advisement of the participants of their right of appeal. In addition, the judge instructed all of the defendants that they had a right to free counsel, and offered to defer the proceedings for two weeks in the event that any wanted to pursue legal representation. Consequently, Defendant cannot contend that he was prejudiced because either a language barrier precluded him from understanding the advisement, or the judge otherwise denied him his right to representation or appeal.

■ Finally, Defendant's implied argument that the 1997 hearing violated Due Process because it was conducted as a group proceeding is without merit. Although the Tenth Circuit has not explicitly addressed the issue, every circuit to do so has found that group hearings are not *per se* unconstitutional. All of these circuits have determined that the operative inquiry is whether the group-nature of the proceeding caused prejudice to the defendant in question. *See U.S. v. Polanco–Gomez,* 841 F.2d 235, 237 (8th Cir.1988); *U.S. v. Nicholas–Armenta,* 763 F.2d 1089, 1091 (9th Cir.1985). *See also U.S. v. Palacios–Martinez,* 845 F.2d 89 (5th Cir.), cert. denied, 488 U.S. 844, 109 S.Ct. 119, 102 L.Ed.2d 92 (1988) (although not couched in terms of prejudice, the court required findings that are the functional equivalent of prejudice (whether the defendant (1) was informed of his basic rights; (2) had the opportunity to exercise these rights; (3) was queried individually by the Immigration Judge as to the facts of his deportation; and (4) exhibited his understanding of the process at that time)). In each case, the courts found that the defendants had not been prejudiced when their cases were addressed in group hearings. *See Polanco–Gomez,* 841 F.2d at 237; *Nicholas–Armenta,* 763 F.2d at 1091; *Palacios–Martinez,* 845 F.2d at 89.

Here, as revealed above, Defendant cannot show that he suffered any prejudice as a result of the group hearing. In addition, I see no reasoned basis to contradict the weight of authority and hold that group immigration hearings are *per se* unconstitutional. For the foregoing reasons, I conclude that there was no Constitutional problem with the 1997 hearing that requires me to dismiss the indictment.

**B.**

■ Defendant next contends, and the Government stipulates, that incriminating statements were made to an INS Special Agent on August 30, 1999 without advisement under Article 36 of the Vienna Convention on Consular Relations (Vienna Convention) that he could request to con-

tact the Mexican consulate. Thus, he asserts the statements must be suppressed. As support, Defendant "advances the rationale of the [Ninth Circuit's] (withdrawn) opinion in *U.S. v. Lombera–Camorlinga,* 170 F.3d 1241 (9th Cir.1999) as a basis for suppression of the statements he made." *Motion to Dismiss* at 4. For the reasons stated below, I will not suppress Defendant's statement.

In *Lombera–Camorlinga,* the Ninth Circuit required Defendants who prove a violation of the Vienna Convention to also show that they were prejudiced thereby. In order to establish prejudice, the *Lombera–Camorlinga* court required a showing of "some likelihood" that but for the Vienna Convention violation, the " 'defense and the conduct of the hearing would have been materially affected.' " *Lombera–Camorlinga,* 170 F.3d at 1243 (quoting *U.S. v. Rangel–Gonzales,* 617 F.2d 529, 531 (9th Cir.1980)). If such prejudice is shown, then the statements must be suppressed. *Id.*

Here, assuming without deciding that Defendant has standing to enforce the Vienna Convention, *compare Breard v. Greene,* 523 U.S. 371, 118 S.Ct. 1352, 1355, 140 L.Ed.2d 529 (1998) ("The Vienna Convention—which arguably confers on an individual the right to consular assistance following arrest. . . ."); *United States v. Torres–Del Muro,* 58 F.Supp.2d 931, 932–33 (C.D.Ill.1999) (recognizing that individual rights established by Article 36 give defendants standing); *U.S. v. Hongla–Yamche,* 55 F.Supp.2d 74, 77–78 (D.Mass. 1999) (same); *U.S. v. Alvarado–Torres,* 45 F.Supp.2d 986, 989 (S.D.Cal.1999) (same); *U.S. v. Superville,* 40 F.Supp..2d 672, 678 (D.Vi.1999) (same); *U.S. v. Chaparro–Alcantara,* 37 F.Supp.2d 1122, 1125 (C.D.Ill. 1999) (same); *U.S. v. $69,530.00 in U.S. Currency,* 22 F.Supp.2d 593, 594 (W.D.Tex.1998) (same) *with U.S. v. Salameh,* 54 F.Supp.2d 236, 279–80 (S.D.N.Y. 1999) (declining to "wade into the morass over the existence of [ ] a private right of action"); *U.S. v. Tapia–Mendoza,* 41 F.Supp.2d 1250, 1254–54 (D.Utah 1999) (finding it "doubtful that such a private right exists"); *U.S. v. Esparza–Ponce,* 7 F.Supp.2d 1084, 1096 (S.D.Cal.1998) ("The Court need not definitively decide this muddled issue [of individual rights]."); *Republic of Paraguay v. Allen,* 949 F.Supp. 1269, 1274 (E.D.Va.1996), aff'd. 134 F.3d 622 (4th Cir.1998) (suggesting that no private individual rights are created by the Convention), *and* that the August 30, 1999 interview violated the Vienna Convention, Defendant cannot show prejudice. Indeed, Defendant cannot reasonably argue that but for the August 30, 1999 interview, the INS would not have been aware of either his previous deportation order, or the fact that he illegally reentered the country. As I stated, both pieces of information dictated that Defendant could only be deported. *See* 8 U.S.C. § 1231(a)(5). Consequently, there is no likelihood that but for the alleged Vienna Convention violation, the " 'defense and the conduct of the hearing would have been materially affected.' " *Lombera–Camorlinga,* at 1243 (quoting *U.S. v. Rangel–Gonzales,* 617 F.2d 529, 531 (9th Cir.1980)). Under these circumstances, I will not suppress Defendant's August 30, 1999 statement.

### C.

Finally, Defendant moves for further discovery of the tape recording of the 1997 hearing. Because the Government has already produced the tape recording, I deny as moot the motion.

Accordingly, I ORDER that:

(1) defendant's motion to dismiss is DENIED;

(2) defendant's motion to suppress statements is DENIED; and

(3) defendant's motion for further discovery is DENIED as moot.