**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Victor Manuel MERAZ–VALETA,
Defendant–Appellant.**

**No. 93–2169.**

United States Court of Appeals,
Tenth Circuit.

June 6, 1994.

Jana M. Miner, Asst. Federal Public Defender, Las Cruces, NM, for defendant-appellant.

James D. Tierney, Asst. U.S. Atty., Albuquerque, NM (John J. Kelly, U.S. Atty., Albuquerque, NM, with him on the brief), for plaintiff-appellee.

Before SEYMOUR, Chief Judge, McKAY and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

Defendant Victor Meraz–Veleta appeals his conviction for unlawful reentry after deportation, 8 U.S.C. § 1326(a), (b)(2). We have jurisdiction under 28 U.S.C. § 1291.

On November 16, 1988, Defendant was convicted of possession of marijuana with intent to distribute and sentenced to a term of 33 months imprisonment. The conviction made him eligible for deportation, see 8 U.S.C. § 1251(a)(2)(B) (providing for deportation of any alien convicted of a violation relating to controlled substances), and on August 2, 1991, following a deportation hearing conducted by an administrative law judge ("ALJ"), Defendant was ordered deported to Mexico. Prior to his deportation, the Immigration and Naturalization Service ("INS") sent Defendant a warning letter which stated that "any deported person who returns without permission is guilty of a felony ... [and] may be punished by imprisonment of not more than two years and/or a fine of not more than $1,000.00."

During the autumn of 1992, Defendant received several phone calls from his wife who had remained in the United States with their four children. During these phone conversations, Defendant claims his wife began experiencing schizophrenic symptoms. Fearing that his children were in danger, Defendant decided to reenter the United States in order to either take custody of the children or place them in his sister-in-law's care. On November 9, 1992, Defendant was arrested in Deming, New Mexico and was indicted for unlawful reentry after deportation.

Following his indictment, Defendant filed several pretrial motions to dismiss the indictment and also informed the district court of his intent to present a defense of necessity. The district court denied Defendant's motion to dismiss the indictment and also disallowed the necessity defense. Thereafter, Defendant entered a conditional guilty plea agreement pursuant to Fed.R.Crim.P. 11(a)(2) reserving the right to appeal the denial of his motions to dismiss and the court's disallowance of his necessity defense. On February 23, 1993, the district court sentenced Defendant to sixteen months imprisonment and this appeal followed.

## I.

■ Defendant first contends the district court erred in refusing to allow his necessity defense. We review the district court's denial of the defense of necessity for an abuse of discretion. *United States v. Seward,* 687 F.2d 1270, 1276 (10th Cir.1982) (en banc), *cert. denied,* 459 U.S. 1147, 103 S.Ct. 789, 74 L.Ed.2d 995 (1983).

Defendant proffered the following evidence in support of his necessity defense:

[Counsel for Meraz]: What my client will testify to is that he was in Mexico and he was earning a living. Then he got a phone call from his wife [who] has the four children in custody or has them here. She has a history of schizophrenia, [and] she was—he knew enough to know that she was experiencing the symptoms of schizophrenia again. Those symptoms included staying up all night, keeping the kids up and keeping them in one room because she was afraid someone was going to come to get them. Her sister lives in Deming also and had tried to get her to the [d]octor. She wouldn't go to the doctor. That was a pretty short call. My client then immediately called the sister and said, 'Is this true, is this happening?' And the sister said, 'Yes. I can't do anything with Christine. You know, she's keeping the kids up all night and then sending them to school.' [M]y client then travelled back to the United States. He [had] been in the United States two to three days trying to figure out what to do with the kids. And I would—I can present testimony from the sister, also from a social worker and one of the other family members, [that] my client, being in Mexico, did not feel he had any legal means available to get anyone to take care of the kids other than him coming here and trying to place them—and take them from the wife and place them in custody of the sister.

(Tr. II at 96–97). The district court determined that because Defendant had other legal alternatives to assist him, the proffered evidence was insufficient to support a defense of necessity.

■ In *Seward,* we held that a defendant may successfully use a defense of necessity to excuse an otherwise illegal act if (1) there is no legal alternative to violating the law, (2) the harm to be prevented is imminent, and (3) a direct, causal relationship is reasonably anticipated to exist between defendant's action and the avoidance of harm. *Id.* at 1275 (quoting *State v. Marley,* 54 Haw. 450, 509 P.2d 1095 (1973)). Under the defense of necessity, "one principle remains constant: if there was a reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,' the defense[ ] will fail." *Id.* at 1276 (quoting *United States v. Bailey,* 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) (internal citations omitted)). In proving that there were no legal alternatives available to assist him, a defendant must show he was "confronted with … *a crisis which did not permit a selection from among several solutions, some of which did not involve criminal acts.*" *Id.* (emphasis added).

■ In the instant case, Defendant's defense of necessity fails because under the offer of proof, there were reasonable, legal alternatives open to Defendant other than his illegal reentry into the United States. For example, Defendant could have contacted the Deming police department or social welfare agents concerning the safety and welfare of his children. Additionally, Defendant could have contacted his sister-in-law who lived near his children, who in turn could have taken appropriate steps if the children were in danger. As Defendant has failed to show he was "confronted with … a crisis which did not permit a selection from among several [legal alternatives]," *id.,* Defendant has failed to meet an essential requirement necessary to permit the district court to submit the necessity defense to the jury. Defendant argues that because he believed he had no legal alternatives available to assist him, he should be allowed to submit his necessity defense to the jury. However, Defendant's subjective belief as to available legal alternatives is not determinative. As long as Defendant's crisis permitted "a selection from among several solutions, some of which did not involve criminal acts," *Seward,* 687 F.2d at 1276, the necessity defense must fail. We

therefore hold the district court did not abuse its discretion in disallowing Defendant's defense of necessity.

## II.

Defendant next challenges the district court's denial of his motion to dismiss the indictment. Specifically, Defendant claims the indictment should have been dismissed because (1) it alleged an offense punishable by a greater penalty than that contained in an INS warning letter issued prior to his deportation by law; (2) it was unconstitutionally vague; (3) it permitted his prosecution without requiring proof of specific intent; and (4) his underlying deportation hearing was fundamentally unfair. We review the denial of a motion to dismiss the indictment for an abuse of discretion. *United States v. Kingston,* 971 F.2d 481, 490 (10th Cir.1992).

### A.

Defendant first argues that the indictment violated his right to due process and should have been dismissed because the INS's warning letter given to him prior to his deportation improperly advised him that the penalty for illegal reentry after deportation was a term of imprisonment not to exceed two years. We disagree. Defendant cites no authority indicating the government has an obligation to inform deported persons of the *precise* penalties which might attach upon illegal reentry into the United States. Furthermore, the INS did not attempt or undertake to inform Defendant of all possible penalties he would be subjected to if he returned to the United States. Under these circumstances, we find no due process violation. *See United States v. Arzate-Nunez,* 18 F.3d 730, 737 (9th Cir.1994) (finding no due process violation on similar facts).

Alternatively, Defendant argues that because the INS letter incorrectly informed him that the penalty for reentry after deportation would be a two-year term of imprisonment, the doctrine of entrapment by estoppel bars the government from seeking a term of imprisonment in excess of two years. We disagree.

The defense of entrapment by estoppel is implicated where a government official misleads a party as to the legality of certain conduct and the party proceeds to act on the misrepresentation so that criminal prosecution of the party implicates due process concerns under the Fifth and Fourteenth Amendments. *See Cox v. Louisiana,* 379 U.S. 559, 568–71, 85 S.Ct. 476, 482–84, 13 L.Ed.2d 487 (1965); *Raley v. Ohio,* 360 U.S. 423, 437–39, 79 S.Ct. 1257, 1265–67, 3 L.Ed.2d 1344 (1959); *see also United States v. Austin,* 915 F.2d 363, 366 (8th Cir.1990), *cert. denied,* 499 U.S. 977, 111 S.Ct. 1626, 113 L.Ed.2d 722 (1991). In the instant case, Defendant was not misled as to the legality of his conduct. If he was misled at all, it was only as to the specific penalties resulting from illegal reentry into the United States. Because INS officials properly informed Defendant that any subsequent reentry without permission of the Attorney General would constitute a felony, the entrapment by estoppel defense is inapplicable to the facts of this case. Thus, the district court did not err in denying Defendant's due process claims.

### B.

Defendant next argues the indictment should have been dismissed because the statute under which he is charged, 8 U.S.C. § 1326(a), is unconstitutionally vague. Section 1326(a) provides in pertinent part:

[A]ny alien who—

(1) has been arrested and deported or excluded and deported, and thereafter

(2) enters, attempts to enter, or *is at any time found in, the United States,* unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; . . .

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

(emphasis added). Defendant claims § 1326(a) is rendered unconstitutionally vague by the use of the phrase "found in". Specifically, Defendant argues that the crime of being "found in" the United States does not provide guidance as to how a party must

curtail his conduct so as to comport with the requirements of the statute.

■ "The void-for-vagueness doctrine requires that a penal statute define a criminal offense with sufficient specificity that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v. Pinelli,* 890 F.2d 1461, 1470 (10th Cir.1989) (citing *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983)), *cert. denied,* 495 U.S. 960, 110 S.Ct. 2568, 109 L.Ed.2d 750 (1990). Other than in the First Amendment context, vagueness challenges also must be "examined in light of the facts of the case, on an as-applied basis." *United States v. McElroy,* 910 F.2d 1016, 1021 (2d Cir.1990) (citation omitted).

■ Under § 1326(a), the government must prove that (1) the defendant is an alien; (2) who was arrested and deported; and (3) thereafter voluntarily reentered, attempted to reenter, or was found in the United States; (4) without the permission of the Attorney General. *See United States v. Miranda–Enriquez,* 842 F.2d 1211, 1212 (10th Cir. 1988), *cert. denied,* 488 U.S. 836, 109 S.Ct. 100, 102 L.Ed.2d 75 (1988). The "found in" language of § 1326(a) informs an alien who has been previously deported and returns to the United States without the permission of the Attorney General that he or she will be deemed guilty of an offense upon discovery within the United States. *See United States v. Whittaker,* 999 F.2d 38, 42 (2d Cir.1993). Deported aliens "are already aware that they are in violation of the law as evidenced by their surreptitious entry." *Id.* (quoting *United States v. DiSantillo,* 615 F.2d 128, 135 (3d Cir.1980)). We therefore agree with the Second Circuit that the "found in" language of § 1326(a) which "is synonymous with 'discovered in,'" *id.* (quoting *United States v. Canals–Jimenez,* 943 F.2d 1284, 1286–89 (11th Cir.1991)), "is not ambiguous or unconstitutionally vague." *Id.*

In the instant case, Defendant concedes he was aware that his reentry following deportation constituted a felony. As such, § 1326(a) "informed [Defendant] that, if he remained in [the United States] following his illegal reentry, he would be subject to criminal prosecution when he was 'found' here." *Id.* Thus, § 1326(a) is not unconstitutionally vague as applied to Defendant,[1] and the district court did not err in denying Defendant's vagueness challenge.

### C.

■ Defendant also argues the district court erred in failing to dismiss the indictment because the indictment permitted his prosecution without requiring the government to prove he acted with specific intent to violate the law. Defendant's claim is without merit. In *Miranda–Enriquez,* 842 F.2d at 1212, we held that in order for the government to secure a § 1326 conviction, ... "[n]o intent to break the law—whether characterized as 'specific intent' or 'general criminal intent'—must be proved." Thus, the district court did not err in denying Defendant's specific intent claim.

### D.

■ Finally, Defendant claims the indictment should have been dismissed because his underlying deportation hearing violated his right to due process because it was fundamentally unfair in that (1) the ALJ disregarded a judicial recommendation against deportation; (2) the ALJ failed to advise him of his right to appeal; and (3) he was provided inadequate legal representation. A collateral attack on the constitutional validity of deportation proceedings underlying a 8 U.S.C. § 1326 criminal prosecution is a mixed question of fact and law. We review a mixed question of law and fact involving constitutional rights de novo. *United States v. Valdez,* 917 F.2d 466, 468 (10th Cir.1990).

---

1. Defendant relies on *Canals–Jimenez,* 943 F.2d at 1289, in support of his vagueness challenge. In *Canals,* the Eleventh Circuit in dicta expressed "doubts as to the validity of the 'found in' concept in the statute." Despite expressing concerns over the "found in" language of § 1326(a), the court also noted that plausible arguments could be made supporting the statute's constitutionality. *Id.* We are not persuaded by the Eleventh Circuit's "doubts" concerning § 1326(a) and instead follow the Second Circuit in upholding the constitutionality of § 1326(a).

A defendant may collaterally challenge a deportation hearing in an 8 U.S.C. § 1326 prosecution if the defendant can show that the deportation hearing was fundamentally unfair and deprived the alien of the right to judicial review. *Id.* at 469 (citing *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987)). In order to establish fundamental unfairness, the alien must show that he was prejudiced. *Id.*

Defendant first claims his deportation hearing was fundamentally unfair because the ALJ erroneously disregarded a binding judicial recommendation against deportation. At the time Defendant was sentenced for possession of marijuana, the statute authorizing judicial recommendations against deportation provided:

> "The provisions of subsection (a)(4) of this section respecting the deportation of an alien convicted of a crime or crimes [involving moral turpitude] shall not apply ... if the court sentencing such alien for such crime shall make, at the time of first imposing judgment or passing sentence ... a recommendation to the Attorney General that such alien not be deported.... *The provisions of this subsection shall not apply in the case of any alien who is charged with being deportable ... under subsection (a)(11) of this section [drug offenses]*."

8 U.S.C. § 1251(b) (emphasis added). Under the express terms of the statute, the offenses listed in subsection (a)(4) involving crimes of moral turpitude were "the only ones subject to a [judicial] recommendation." *United States v. Quintana*, 914 F.2d 1409, 1410 (10th Cir.1990). As Defendant's offense was drug related, the district court lacked authority to issue a judicial recommendation and thus its recommendation was not binding upon the ALJ at Defendant's deportation hearing. Because the recommendation was not binding, the ALJ's failure to consider it was not fundamentally unfair.[2]

Defendant next claims the ALJ's failure to inform him of his right to appeal and the time in which to exercise that right was also fundamentally unfair. The record discloses that notice of a right to appeal was sent to Defendant's certified representative, Gilbert Jezbara, who represented Defendant at his deportation hearing. Assuming without deciding that this method of advising Defendant of his right to appeal was inadequate, Defendant has nevertheless failed to show that if he had been appropriately informed of his right to appeal, the outcome of his case would have been different. *See United States v. Holland,* 876 F.2d 1533, 1537 (11th Cir.1989) (no fundamental unfairness resulting from failure to inform defendant of right to appeal where defendant could not show the result would have been different). We therefore hold that in the instant case the failure to advise Defendant of his right to appeal was not fundamentally unfair.

Defendant next claims the inadequate legal representation afforded him during his deportation hearing rendered the hearing fundamentally unfair. Defendant claims "the record is clear [Defendant's legal representative] had no understanding of the complexity of the situation or of effective legal arguments that could have been made on behalf of [Defendant]." Despite these contentions, Defendant has again failed to show he was prejudiced by the alleged inadequate legal representation. Furthermore, our review of the record indicates that Defendant's legal representative sought a waiver of deportation pursuant to 8 U.S.C. § 1182(c), submitted exhibits in support of the waiver, and conducted a direct and redirect examination of Defendant at his deportation hearing. Under these circumstances, Defendant has failed to show his deportation hearing was fundamentally unfair. We therefore conclude the district court did not

---

**2.** Defendant makes much of the fact that the government failed to oppose the recommendation at Defendant's original sentencing. Because of this failure, Defendant claims the government has waived the right to now challenge the district court's power to enter a valid recommendation.

Defendant's argument however overlooks the fact that he bears the burden of showing the ALJ's disregard of the recommendation was fundamentally unfair. Defendant has failed to make such a showing.

 

abuse its discretion in denying Defendant's motion to dismiss the indictment.

AFFIRMED.