**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 16 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

—————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

FAUSTO AVILA-GONZALEZ,

Defendant-Appellant.

No. 98-1391
(D.C. No. 98-CR-90-M)
(D. Colo.)

—————————

**ORDER AND JUDGMENT**[*]

—————————

Before **ANDERSON, EBEL,** Circuit Judges, and **CROW**, District Judge.[**]

—————————

The defendant Fausto Avila-Gonzalez appeals his conviction under 8 U.S.C. §
1326(a) for illegally reentering the United States after being deported subsequent to an
aggravated felony conviction. The defendant challenges the district court's order denying
his motion to dismiss the indictment. The defendant contends the deportation
proceedings underlying this conviction were in violation of his right to due process. We

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citations of orders and judgments; nevertheless, an order and judgment may be cited
under the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable Sam A. Crow, Senior United States District Judge for the District
of Kansas, sitting by designation.

exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

While incarcerated on state convictions for attempted felony theft and criminal impersonation, Mr. Avila-Gonzalez was served with an order from the Immigration and Naturalization Service ("INS") in June of 1996 to show cause why he should not be deported for his September 1995 state conviction of attempted distribution of a controlled substance. Proceedings on this order to show cause did not begin until February of 1997 following the defendant's release from state prison. Mr. Avila-Gonzalez retained Daniel Post as counsel to represent him in the deportation proceedings. In June of 1997 the defendant was arrested and released on traffic charges, and in July the defendant was arrested and detained on a parole violation.

Mr. Post entered his appearances in these other proceedings and secured agreements which resulted in the following. Mr. Avila-Gonzalez pleaded guilty to the traffic charges and received a ten-day sentence and credit for time served on the parole violations. He pleaded guilty to the parole violations but was turned over to INS custody. He submitted to the INS a signed statement that conceded he was subject to deportation, that requested a final deportation order to Mexico, and that waived all rights in the deportation proceedings, including the right to appeal. The immigration judge issued the final deportation order on September 18, 1997, and Mr. Avila-Gonzalez was deported to Mexico in October of 1997.

In February of 1998, the INS was contacted that Mr. Avila-Gonzalez was being

held at Weld County Jail, Greeley, Colorado, following an arrest on traffic charges. Prior to reentering the United States, he had not applied for or received permission from the Attorney General of the United States. Mr. Avila-Gonzalez moved to dismiss the indictment that charged him with illegally reentering the United States in violation of 8 U.S.C. § 1326(a). He argued his deportation proceedings were fundamentally unfair in two regards. First, the regulatory procedures, as applied here, allowed him to stipulate in writing to deportation and to waive all rights to a hearing and appeal without being physically present. Second, because his counsel was ineffective, he did not knowingly and voluntarily waive his rights in those proceedings, including the right to judicial review on appeal. The district court conducted an evidentiary hearing and denied the motion by written order. The case went to trial, and the jury found Mr. Avila-Gonzalez guilty. His only dispute on appeal is with the district court's ruling on his due process challenge to the deportation proceedings.

A due process challenge to the underlying immigration proceedings presents a mixed question of law and fact. *United States v. Wittgenstein*, 163 F.3d 1164, 1170 (10th Cir. 1998) (citations omitted), *cert. denied*, 119 S. Ct. 2355 (1999); *United States v. Meraz-Valeta*, 26 F.3d 992, 997 (10th Cir. 1994). We review de novo the district court's denial of such a challenge. *Id*. The findings of fact underlying that decision, however, are accepted unless clearly erroneous. *United States v. Torres-Sanchez*, 68 F.3d 227, 229 (8th Cir. 1995); *cf. United States v. Blackwell*, 127 F.3d 947, 955 (10th Cir. 1997) (a

district court's finding that counsel was not ineffective is a mixed question reviewed de novo, but the factual findings underlying the ultimate finding are reviewed only for clear error).

To make a successful collateral challenge[1] to a deportation order in a § 1326 prosecution, a defendant must show that the deportation hearing effectively foreclosed his right to seek judicial review and was fundamentally unfair. *Wittgenstein*, 163 F.3d at 1170. "'[T]o establish fundamental unfairness, the alien must show that he was prejudiced.'" *Id*. (quoting *Meraz-Valeta*, 26 F.3d at 998 (citation omitted)). While arguing first that he need not show prejudice when he has been denied the right to judicial review, Mr. Avila-Gonzalez concedes the Tenth Circuit has held to the contrary and proceeds to his alternative arguments of prejudice. Bound by prior panels' decisions absent en banc reconsideration or a superseding Supreme Court decision, *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993), *cert. denied*, 513 U.S. 807 (1994), we accept his concession.

Before the district court, Mr. Avila-Gonzalez briefly stated his position that any waiver had to "be done in open court, in front of an immigration judge, so that the judge can ascertain a knowing and intelligent waiver." (Rec. vol. I, 22). On appeal, he repeats

---

[1]Because the government does not dispute that the defendant exhausted his administrative remedies, our analysis of the defendant's collateral attack on the deportation hearing is the same under 8 U.S.C. § 1326(d) and the constitutional standard of *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-39 (1987). *United States v. Wittgenstein*, 163 F.3d 1164, 1170 (10th Cir. 1998).

this argument but waits until his reply brief to cite any authority for it. None of his cited authorities on rights in criminal proceedings are persuasive, for "[a] deportation proceeding is a purely civil action" and "various protections that apply in the context of a criminal trial do not apply in a deportation hearing." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984); *see United States v. Valdez*, 917 F.2d 466, 469 (10th Cir. 1990). The defendant's "lack of authority is not surprising since such a high hurdle has not before been raised in order to comply with the basic notions of due process in a deportation case." *United States v. Benitez-Villafuerte*, 186 F.3d 651, 656 (5th Cir. 1999) (reversed district court's holding that the alien's written waiver of rights was ineffective because it was not made in open court before a neutral judge who could affirm that the waiver was knowing and voluntary). A deportation hearing may proceed without the respondent, if he does not avail himself of the reasonable opportunity to be present. *INS v. Lopez-Mendoza*, 468 U.S. at 1038-39. A respondent can also waive his rights expressly in person, *United States v. Paredes-Batista*, 140 F.3d 367, 376-78 (2nd Cir.), *cert. denied*, 119 S. Ct. 143 (1998), and expressly by written stipulation or waiver, *United States v. Benitez-Villafuerte*, 186 F.3d at 656-658; *United States v. Galicia-Gonzalez*, 997 F.2d 602, 603-04 (9th Cir. 1993). Failing to show that the regulatory procedures denied him a reasonable opportunity to claim all the procedural due process to which he was constitutionally entitled, the defendant's argument as advanced here is rejected.

In support of his contention that he did not knowingly and intentionally waive his

rights to a deportation hearing and judicial review, Mr. Avila-Gonzalez testified that he cannot read and can converse in English only when it is spoken slowly. He denied ever telling Mr. Post that he wanted to be deported to Mexico. He admitted signing the statement in which he stipulated to a final order of deportation and waived his rights to a hearing and appeal. Mr. Avila-Gonzalez testified, however, that Mr. Post never read or explained this document when he signed it.

The government called Mr. Post who testified that he had no difficulty conversing in English with Mr. Avila-Gonzalez, that he was satisfied the defendant understood him, and that he observed nothing to indicate the need for an interpreter. After being jailed on parole violations, Mr. Avila-Gonzalez changed his mind and instructed Mr. Post that he wanted to be deported to Mexico immediately to avoid any additional incarceration in state prison. Mr. Post summarized this conversation in a hand-delivered letter to Mr. Avila-Gonzalez and read it to him. A week later, the defendant pleaded guilty to the state charges and told the district court judge that he understood and found acceptable the arrangements made by Mr. Post which included his release to INS for immediate deportation to Mexico. Mr. Post testified that he read to the defendant each line of the prepared waiver and statement for deportation, had the defendant sign it, and had it witnessed by a guard at the jail. Mr. Post did not have any question that Mr. Avila-Gonzalez understood what he was signing and what would happen as a result of his stipulation and waiver.

We find nothing clearly erroneous in the district court's finding that credited Mr. Post's testimony over the conflicting testimony given by Mr. Avila-Gonzalez. The written waiver and stipulation signed by the defendant states in plain and direct terms his waiver of the "right to a personal hearing before an immigration judge" and "right to appeal." (Rec. vol. I, 30, Gov. Ex. 2). Out of an asserted desire to end his current detention and avoid further incarceration,[2] Mr. Avila-Gonzalez voluntarily and knowingly chose to waive his rights in the deportation proceedings and stipulate to his immediate deportation. *See United States v. Mendoza-Lopez*, 7 F.3d 1483, 1486 (10th Cir. 1993), *cert. denied*, 511 U.S. 1036 (1994). Having knowingly and intelligently waived his rights to a deportation hearing and judicial review, the defendant has not shown he was denied any constitutional rights on which to mount a successful collateral attack to the validity of the deportation proceedings. Nor has Mr. Avila-Gonzalez shown that he was prejudiced by any alleged deficiencies in those proceedings or with his counsel's performance.[3] We

---

[2]Not only was Mr. Avila-Gonzalez facing possible detention time on his traffic charges and parole violation, but as Mr. Post testified, the parole officer indicated that officers found drugs in the car when Mr. Avila-Gonzalez was arrested on traffic charges.

[3]Because of his felony drug conviction, Mr. Avila-Gonzalez was without a defense to or viable basis for contesting deportation. What he argues to be prejudice is the lost opportunity during the pendency of his deportation proceeding to obtain relief in state district court on his prior felony drug conviction based on ineffective assistance of counsel. We agree with the district court that this lost opportunity is too speculative here to qualify as prejudice. There being no reasonable basis for finding that the outcome of Mr. Avila-Gonzalez's deportation case would have been different, *see United States v. Meraz-Valeta*, 26 F.3d 992, 998 (10th Cir. 1994), we conclude that the alleged deficiencies with his attorney's performance and with the procedures employed did not render the deportation proceedings fundamentally unfair.

therefore conclude the district court did not err in denying the defendant's motion to dismiss the indictment.

 AFFIRMED.

          Entered for the Court

          Sam A. Crow
          District Judge