**F I L E D**

**UNITED STATES COURT OF APPEALS**

**OCT 16 2001**

**TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff - Appellee,<br><br>v.<br><br>ALEJANDRO ZALAZAR-TORRES,<br><br>    Defendant-Appellant. | No. 00-3305<br>(D.C. No. 00-CR-10073-01)<br>(District of Kansas) |

**ORDER AND JUDGMENT***

Before **EBEL**, **HOLLOWAY** and **LUCERO**, Circuit Judges.

In this direct criminal appeal, Alejandro Zalazar-Torres seeks reversal of his conviction under 8 U.S.C. § 1326 for illegal re-entry into the United States after having been deported. Because he had a prior conviction for an aggravated felony, Mr. Zalazar was subject to the penalty provisions of subsection 1326(b)(2). On appeal, Mr. Zalazar challenges the 1997 deportation proceeding which underlies his present conviction, contending the proceeding was fundamentally unfair, depriving him of due process. We

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

conclude that he has failed to establish that the 1997 INS proceeding was fundamentally unfair, depriving him of due process. We accordingly affirm his conviction.

## I

In 1997, Mr. Zalazar was convicted in Harvey County District Court, State of Kansas, of the felony offense of possession of cocaine with intent to distribute. Following that conviction, Mr. Zalazar was deported from the United States on December 17, 1997. Defendant again came to the attention of the INS in November 1999, when he was in the custody of the Wichita Police Department on charges of burglary and theft. The instant prosecution commenced on April 19, 2000, when Defendant was charged by criminal complaint in federal court with illegal reentry in violation of 8 U.S.C. § 1326, and a grand jury indictment on the same charge followed on May 2, 2000. After a motion to dismiss the indictment had been denied by the district judge, Defendant entered into a conditional plea agreement, reserving the right to appeal the denial of his motion to dismiss. Defendant was sentenced to imprisonment of 36 months, to be followed by a term of supervised release of three years, and he was ordered to pay a special assessment of $100.00.

## II

Mr. Zalazar argues that his Fifth Amendment right to due process of law was

violated in his 1997 removal[1] proceeding and that his conviction therefore should be reversed. Mr. Zalazar presents his challenge to the 1997 proceeding in a framework provided by statute:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) of this section unless the alien demonstrates that –
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at [sic] which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). We have recognized that "[t]his section comports with the constitutional standard for due process" set forth in *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-39 (1987). *United States v. Wittgenstein*, 163 F.3d 1164, 1170 (10th Cir. 1998), *cert. denied*, 527 U.S. 1012 (1999). A removal proceeding is a civil proceeding, not a criminal one, and the demands of due process are accordingly less strict. *See United States v. Valdez*, 917 F.2d 466, 469 (10th Cir. 1990).

Mr. Zalazar contends that the first requirement of exhaustion of administrative remedies should be excused because the INS could not have decided his claims of deprivation of his constitutional rights. He cites, *inter alia*, *Rabang v. INS*, 35 F.3d 1449,

---

[1]The statutory scheme now uses the term "removal" instead of "deportation." *See Jurado-Gutierrez v. Greene*, 190 F.3d 1135, 1140 n.2 (10th Cir. 1999), *cert. denied sub nom. Palaganas-Suarez v. Greene*, 529 U.S. 1041 (2000).

1451 (9th Cir. 1994) (Board of Immigration Appeals would not have had jurisdiction to decide claim that plaintiffs were citizens under the Fourteenth Amendment; a civil action for declaratory judgment therefore was not barred by failure to exhaust); and *Dastmalchi v. INS,* 660 F.2d 880, 886 (3d Cir. 1981) (dictum that "[n]either an Immigration Judge nor the Board of Immigration Appeals, in the course of a deportation proceeding, can enter an order voiding an alien's deportation in response to a constitutional objection"). The Government does not argue that Defendant's appeal should be barred for failure to pursue administrative remedies. Consequently, we will proceed in our consideration of Defendant's argument, but we express no opinion on whether his failure to exhaust administrative remedies is justified.[2]

## III

---

[2]It is clear that an agency does not have authority to determine the constitutionality of a statute. We have said, however, that "'[A] fundamental distinction must be recognized between constitutional applicability of legislation to particular facts and constitutionality of the legislation. . . . We commit to administrative agencies the power to determine constitutional applicability, but we do not commit to administrative agencies the power to determine constitutionality of legislation.'" *McGrath v. Weinberger*, 541 F.2d 249, 251 (10th Cir. 1976) (quoting 3 Kenneth Culp Davis, *Administrative Law Treatise* § 20.04, at 74 (1958)).

Defendant here does not contend that the statute is unconstitutional, only that its application in his case was unconstitutional. Moreover, as discussed below, Defendant's argument in this case is focused on procedural protections which are mandated by *statute*, whether or not they are constitutionally required. Thus, we do not endorse Defendant's contention that exhaustion of administrative remedies would have been futile in this case. Instead, in the absence of an argument by the Government on the point, we simply proceed to decide the appeal on other grounds.

Thus we move to Defendant's attempts to show that he was improperly deprived of the opportunity for judicial review and that the entry of the order was fundamentally unfair, the second and third requirements under § 1326(d). We review *de novo* the mixed question of law and fact raised by a collateral attack on the constitutional validity of removal proceedings underlying a prosecution for illegal reentry under 8 U.S.C. § 1326. *United States v. Meraz-Valeta*, 26 F.3d 992, 997 (10th Cir. 1994). We have held that in order to show that the underlying order was fundamentally unfair, the alien must show prejudice. *Id*. at 998.

Mr. Zalazar contends that decision by an unbiased arbiter is one of the fundamental attributes of due process, the absence of which renders an adjudication constitutionally infirm even in the absence of prejudice. The underlying principle has long been recognized: "Concededly, a 'fair trial in a fair tribunal is a basic requirement of due process.' *In re Murchison,* 349 U.S. 133, 136 (1955)." *Withrow v. Larkin*, 421 U.S. 35, 46 (1975). Mr. Zalazar cites the Supreme Court's observation in *Mendoza-Lopez* that some procedural errors may be "so fundamental that they may functionally deprive the alien of judicial review, requiring that the result of the hearing in which they took place not be used to support a criminal conviction." 481 U.S. at 839 n.17. Although the Court in *Mendoza-Lopez* declined to enumerate what errors might fall into this category, the opinion cited *Rose v. Clark*, 478 U.S. 570, 577 (1986), and its reference to use of coerced confessions and, significantly for our case, adjudication by a biased judge. *Id.*

We find it unnecessary to decide whether our rule requiring prejudice affords an exception in circumstances establishing a violation of a right so fundamental as to be comparable to the concept of structural error in criminal law. This is so because we conclude that Defendant has failed to establish the predicate for his argument.

As the factual basis for his claim that his 1997 removal was flawed because the decision was not made by a neutral arbiter, Mr. Zalazar relies on the contention that the same official both brought the charges against him and decided that removal was warranted. Review of the record regarding the 1997 removal proceeding is necessary for consideration of this issue. We note first, however, that Mr. Zalazar failed to make this argument in the district court so that our review is for plain error only.[3]

An INS form called "Notice of Intent to Issue a Final Administrative Removal Order" was issued by Ted K. Moss, shown as Assistant District Director, Investigations,

---

[3]We reject the contention that this issue was properly raised in the district court. Mr. Zalazar argued below only that the INS as an institution was not a neutral arbiter since the INS both brought the charges and determined their disposition. That argument fails under *Withrow v. Larkin* and its progeny, including *Harline v. Drug Enforcement Admin.*, 148 F.3d 1199, 1204 (10th Cir. 1998), *cert. denied*, 525 U.S. 1068 (1999); *Hicks v. City of Watonga*, 942 F.2d 737, 746-47 (10th Cir. 1991); and *Mangels v. Pena*, 789 F.2d 836, 838 (10th Cir. 1986). "It is not surprising, therefore, to find that '[t]he case law, both federal and state, generally rejects the idea that the combination [of] judging [and] investigating functions is a denial of due process . . . .' 2 K. Davis, Administrative Law Treatise § 1302, p. 175 (1958)."
Defendant's mere unsubstantiated allegations of bias fail to meet the standards set by the precedents. The present, more specific argument is that the same *individual* brought and decided the charge against defendant in violation of 8 U.S.C. § 1228 (b) (4) (F), and due process. See Brief For The Appellant, at 13-15. We conclude this issue was not fairly presented in the district court.

and was served on Defendant by Immigration Agent Mark S. Larkin on November 25, 1997. This document bears the signature of Mr. Zalazar, acknowledging service of the document at 1:16 p.m. on November 25, 1997. Agent Larkin also signed the form as interpreter, indicating that he gave the notice in Spanish. In a section of that document provided for the response of the person charged, Defendant admitted that he was deportable, and that he was not eligible for relief from deportation, and that he waived his right to contest the charge and his right to file a petition for review of the Final Removal Order. He also waived the usual fourteen day waiting period for execution of the Final Removal Order. The document shows that Mr. Zalazar signed this section of the notice at 1:18 p.m. on November 25, 1997, some two minutes after he acknowledged that it had been served on him.

Deportation Officer Paul L. Mitchell prepared a memorandum for the file dated December 15, 1997, recommending that a Warrant of Removal/Deportation be issued "For the Respondent" Zalazar. In this memorandum, Officer Mitchell makes this statement on which Mr. Zalazar focuses in this appeal: "The Assistant District Director of Investigations ordered the Respondent [*i.e.*, Mr. Zalazar] removed from the United States based on the charge(s) contained on the Notice to Issue a Final Administrative Removal Order (Form I – 851)." The memo also states: "The Assistant District Director of Deportation ordered that a Final Administrative Removal Order (Form I–851A) be issued to the Respondent based on the charges contained on the Notice of Intent to Issue a

Final Administrative Removal Order (Form I – 851)." Our record does not reveal whether the Form I – 851A was issued. On December 17, 1997, a "Warrant of Removal/Deportation" was issued, but the signature of the official is illegible. That signature was entered "for District Director" the document states. This document shows that defendant departed on December 19, 1997.

We conclude that the record is insufficient to support the contention most emphasized by Defendant – that he was deprived of the right to a neutral decision maker in the 1997 INS proceedings. Defendant focuses on the statement in the memorandum by Officer Mitchell that "the Assistant Director of Investigations ordered the Respondent removed from the United States based on the charge(s) contained on the Notice to Issue a Final Administrative Removal Order (Form I - 851)." Because the charging officer was the Assistant Director of Investigations, Moss, on the "Warrant for Arrest of Alien" dated November 25, 1997, Defendant contends that the statement in the Mitchell memo shows that the same person brought the charges against him and decided those charges, in violation of due process as well as in violation of the applicable statute, 8 U.S.C. § 1228(b)(4),[4] and regulation, 8 C.F.R. § 238.1 (1998).

---

[4]This statute provides:

> Proceedings before the Attorney General under this subsection shall be in accordance with such regulations as the Attorney General shall prescribe. The Attorney General shall provide that –

> (A) the alien is given reasonable notice of the charges and of the

Mr. Zalazar's argument ignores an equally pertinent portion of the Mitchell memorandum which indicates that "[t]he Assistant District Director *of Deportation* ordered that a Final Administrative Removal Order (Form I - 851A) be issued to the Respondent . . . ." (emphasis added). That statement suggests that it was not Mr. Moss, the "Assistant District Director, *Investigations*" (emphasis added) who made the final decision. As noted, our record does not include the Final Administrative Removal Order, only the Notice of Intent to Issue a Final Administrative Removal Order. Moreover, the Warrant of Removal/Deportation was not signed by Moss (although we cannot determine by whom it was signed). Mr. Zalazar argues that the unidentified signatories of the Warrant and of the Final Administrative Removal Order (which Order we presume exists

opportunity described in subparagraph (C);

(B) the alien shall have the privilege of being represented (at no expense to the government) by such counsel, authorized to practice in such proceedings, as the alien shall choose;

(C) the alien has a reasonable opportunity to inspect the evidence and rebut the charges;

(D) a determination is made for the record that the individual upon whom the notice for the proceeding under this section is served (either in person or by mail) is, in fact, the alien named in such notice;

(E) a record is maintained for judicial review; and

(F) the final order of removal is not adjudicated by the same person who issues the charges.

8 U.S.C. § 1228(b)(4).

-9-

because it is required by regulation) were merely performing the ministerial duty of executing documents under the command of Moss. We cannot agree that the single statement in the memo by Officer Mitchell, relied on by Defendant Zalazar, compels this conclusion. The scenario of the operative documents being signed by officials taking their orders from the charging officer, Moss, is possible, but it is far from proven by this one statement. The burden of proof is on Mr. Zalazar in this collateral attack on the 1997 removal order. *United States v. Arevalo-Tavares*, 210 F.3d 1198, 1200 (10th Cir. 2000) ("the burden of proof in a collateral attack on a deportation order is on a defendant based on the presumption of regularity that attaches to a final deportation order"). Defendant Zalazar has not succeeded in meeting that burden.

We also find unpersuasive Defendant's contention that his waiver of rights, including his right of direct review of the removal order, should be deemed invalid. Defendant contends that the waiver itself violated due process. In support of this argument, Defendant points to his lack of education, his limited ability to speak English, and the fact that the waiver was signed only two minutes after he acknowledged service of the Notice of Intent accompanied by a statement, in Spanish, of his rights.

We are not persuaded by Defendant's arguments that his waiver of rights should be deemed invalid. In the district court the judge inquired of the parties whether they desired to present evidence. The Defendant declined to do so, asserting that the matter was essentially a legal question. Memorandum and Order, 1 R. Doc. 27 at p.3. Aside from

-10-

the documents attached to its response, the Government also declined to present any evidence. The trial judge noted the Defendant Zalazar's apparent acknowledgment of execution of his written waiver of his right of judicial review, which the statute focuses on in 8 U.S.C. § 1326 (d) (2). The judge said that Zalazar contends the waiver was invalid because his rights were not explained to him by an immigration judge and the waiver was not taken in the presence of a judge.

The judge rejected the contentions of invalidity of waiver and stated that on the evidence presented, and the absence of any evidence to suggest otherwise, the court concluded that the defendant's waiver of his right to judicial review was knowing and voluntary. *Id.* at 4. We agree.

**IV**

As for Defendant's other contentions, we are not willing to assume that he failed to comprehend the significance of the waiver of rights because of his limited education, especially when the statement of rights was provided in Spanish. Defendant complains that the INS failed to preserve an adequate record, in violation of 8 U.S.C. § 1228(b)(4)(E). We hold that the record, although sparse, is adequate even without the Final Administrative Removal Order which should have been included.

In sum, we hold that Mr. Zalazar has failed to show that the 1997 deportation proceeding was fundamentally unfair, failed to show that he was prejudiced by any procedural infirmities, and failed to show that he was improperly deprived of his right of

judicial review, particularly in light of the presumption of regularity which attaches to a final deportation order. *United States v. Arevalo-Tavares*, 210 F.3d at 1200. The record amply supports the trial judge's conclusions, and Mr. Zalazar's challenge to the underlying removal order fails.

**V**

Mr. Zalazar also challenges his sentence, contending that the enhancement of the sentence on the basis that he had formerly been convicted of an "aggravated felony" as that term is used in 8 U.S.C. § 1326 violated the principle enunciated by the Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the existence of the prior felony conviction was not alleged in the indictment. Counsel acknowledges that this argument is foreclosed in this circuit by *United States v. Martinez-Villalva*, 232 F.3d 1329, 1331-32 (10th Cir. 2000); he is asserting this claim of error to preserve it for Supreme Court review. In view of our precedent on the issue, we need not address the argument further.

**Conclusion**

The judgment of the district court is **AFFIRMED**.

Entered for the Court


William J. Holloway, Jr.
Circuit Judge