**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 1 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

v.

PEDRO PEREZ-MADRID, also
known as Raul Perez-Luevano,

  Defendant - Appellant.

No. 02-3304
(D.C. No. 01-CR-10106-WEB)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **KELLY**, Circuit Judges and **SHADUR**[**], District Judge.

Defendant-Appellant Pedro Perez-Madrid entered a conditional guilty plea

to one count of being an alien found in the United States after previously being

deported for an aggravated felony, 8 U.S.C. §§ 1326(a), (b)(2).  Prior to pleading

guilty, the district court denied his motion to dismiss his indictment.  In that

motion, Mr. Perez-Madrid argued that his prior deportation was constitutionally

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable Milton I. Shadur, Senior District Judge, United States
District Court of the Northern District of Illinois, sitting by designation.

deficient and that the government was therefore barred from using it to establish the "deportation" element of an offense under § 1326. Our jurisdiction arises under 18 U.S.C. § 3731 and 28 U.S.C. § 1291, and we affirm.

Background

Mr. Perez-Madrid illegally entered the United States for the first time in 1986. III R. at 6. On March 25, 1997, he was deported to Mexico following a hearing before an immigration judge ("IJ") in El Paso, Texas. I R. Doc 19, Exhibit A. He was subsequently found in the United States on July 14, 2000, and was thereafter deported in August of that year. On this occasion, he was deported without the benefit of a hearing before an IJ pursuant to the "reinstatement of removal" authority granted to the Attorney General in 8 U.S.C. § 1231(a)(5). See also 8 C.F.R. § 241.8. Following this second deportation,[1] Mr. Perez-Madrid was again found within the United States in September 2001, which led to the charge at issue in the present action.

In the district court Mr. Perez-Madrid filed a motion to dismiss the indictment on the ground that the reinstatement of removal procedures employed

---

[1] Following the enactment of the 1996 Amendments to the Immigration and Nationality Act of 1952 ("INA") contained within the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") the term "removal" was substituted for the term "deportation." For simplicity, the former term will be used in this opinion.

to effect his deportation in August 2000 deprived him of due process, and that the deportation therefore could not be used in his prosecution for violating § 1326. See I R. Doc. 19. The district court denied the motion, however, holding that the reinstatement procedure did not violate his rights because it merely reinstated a prior, valid deportation order. I R. Doc 23 at 9. However, the district court also held that Mr. Perez-Madrid was not foreclosed under the relevant statutes from challenging the validity of the deportation order that served as the basis for the reinstatement proceedings. Id. at 9 n.7.

Consequently, Mr. Perez-Madrid filed a second motion to dismiss challenging his March 1997 deportation based on due process violations that allegedly occurred during the deportation hearing. At this hearing, which was attended by twenty aliens, the IJ advised the entire group of the various forms of relief from deportation that might be available, the right to appeal a final order of deportation, the right to be represented by counsel, and various other rights regarding the deportation hearing proceedings. I R. Doc. 29, App. A, partial transcript of deportation hearing ("transcript") at 1-8.[2] The transcript reflects that after the IJ made this general advisement, she began interviewing each alien individually concerning his or her particular circumstances and the relief, if any, the alien desired to seek. Id. at 8. In the colloquy that occurred between the IJ

---

[2] At this hearing, Mr. Perez-Madrid used the alias Raul Perez-Luevan.

- 3 -

and the first alien, Alberto Torres-Viegas–who was charged with being deportable for being found in the United States after having been deported for committing an aggravated felony–the IJ asked what action he wanted her to take, and he responded by stating "[w]ell I don't have another option really but to accept deportation." Id. at 10. In response, the IJ made the following statement:

> Unfortunately that's true in your case. . . . The immigration laws changed dramatically effective September 30, 1996, and the immigration laws provide now that if been [sic] convicted of an aggravated felony you're not eligible for any relief from deportation. . . . Previously you, a lawful [] permanent resident alien such as yourself could apply for pardons or waivers. . . . That unfortunately Congress changed for you, the law changed dramatically started changing [sic] April of 96. . . . So my hands are tied and there's nothing that I can do than [sic] order you deported from the Untied States to your home country of Mexico.

Id. at 10-11. When the IJ interviewed Mr. Perez-Madrid concerning the circumstances of his case, Mr. Perez-Madrid elected not to seek any of the relief previously described, and specifically declined to exercise his right to appeal the IJ's order of deportation. Id. at 24-25.

In his motion to dismiss, however, Mr. Perez Madrid argued that the statement to Mr. Torres-Viegas was erroneous in light of the Supreme Court's opinion in INS v. St. Cyr, 533 U.S. 289 (2001). St. Cyr held that the provisions of AEDPA and IIRIRA did not preclude an aggravated felon from obtaining relief from deportation under § 212(c) of the INA, which was repealed by AEDPA and IIRIRA, where the alien pleaded guilty to the underlying offense prior to the

effective date of those acts.  Id. at 326.  Moreover, he argued that despite the general advisement of rights given to the entire group at the commencement of the hearing, the erroneous advisement to Mr. Torres-Viegas:

> [C]learly was taken as applicable to all twenty aliens in the room, and was personally understood by Perez-Madrid that no avenues of relief from deportation were available.  Thus even though some advice relating to relief was initially given by the immigration judge, it was later negated by the immigration court's understanding that the AEDPA and IIRIRA applied retroactively, a position the Fifth Circuit agreed with until the Supreme Court's decision in St. Cyr.

I R. Doc. 29 at 10.  Consequently, Mr. Perez-Madrid argued that he was deprived of his right to due process during the hearing, that the error rendered it fundamentally unfair, and that he suffered prejudice as a result because he had plausible grounds for relief from deportation under the INA.  Id. at 14-16.  The district court disagreed, holding that he failed to show that the proceeding was fundamentally unfair or that the IJ's comments effectively deprived him of the right to judicial review, I R. Doc. 34 at 1-2, and this appeal followed.

## Discussion

To establish a violation of 8 U.S.C. § 1326, the government must prove that Mr. Perez-Madrid was an alien who was deported and thereafter found in the United States without the Attorney General's consent.  See 8 U.S.C. § 1326(a).  In United States v. Mendoza-Lopez, 481 U.S. 828, 839-40 (1987), the Supreme Court held that where a procedural error in a deportation hearing effectively

deprives an alien of the right to obtain judicial review, the result of that proceeding cannot be used to support a conviction under § 1326. In 1996, subsequent to the decision in Mendoza-Lopez, Congress amended § 1326 to condition a challenge to the validity of a prior deportation order on a showing by the alien that (1) he or she exhausted any available administrative remedies "that may have been available to seek relief against the order," (2) the deportation hearing "improperly deprived the alien of the opportunity for judicial review," and (3) "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). Similarly, we have held that to prevail on a collateral challenge to a prior deportation hearing the defendant has the burden to demonstrate "that the deportation hearing was fundamentally unfair, and that it deprived him of a direct appeal." United States v. Arevalo-Tavares, 210 F.3d 1198, 1200 (10th Cir. 2000).

Moreover, to demonstrate that the hearing was fundamentally unfair, the defendant must show that he was prejudiced. United States v. Meraz-Valeta, 26 F.3d 992, 998 (10th Cir. 1994). This showing, in turn, requires that Mr. Perez-Madrid demonstrate that (a) the comments at issue were directed to all in the room, and (b) there is a "reasonable probability" that he would have obtained the relief to which he now claims he was eligible had the IJ not erred in advising the first alien. See United States v. Aguirre-Tello, 324 F.3d 1181, 1193-94 (10th Cir. 2003) (adopting the "reasonable probability" standard for demonstrating prejudice

- 6 -

in a collateral attack on a deportation order.). The constitutional validity of a deportation proceeding in a § 1326 prosecution presents a mixed question of law and fact that we review de novo. Id. at 1188.

1. Fundamental Unfairness

We agree with the district court that even if the IJ's comments to the first alien were erroneous, Mr. Perez-Madrid nonetheless failed to establish that his hearing was fundamentally unfair. It is clear from the transcript of the hearing that the comments were not directed to Mr. Perez-Madrid, and nothing indicated that they would apply to his particular situation. The statement to Mr. Torres-Viegas was clearly given in the context of his charge of being deportable due to his status as an aggravated felon. See I R. Doc. 29, App. A at 8-11. Mr. Perez-Madrid, however, was not charged with being deportable on that ground. Rather, the government charged that he was deportable based on the fact that he entered the United States without being properly inspected. Id. at 24.

Furthermore, we note that the IJ's general advisement included an advisement that each alien was entitled to the assistance of counsel, the right to appeal, and possibly relief from deportation under various sections of the INA. In so doing, the IJ specifically mentioned that relief from deportation may be available to those who have relatives who are United States citizens, I R. Doc. 29, App. A. at 7-8, those who are eligible for voluntary departure or suspension of

deportation under 8 U.S.C. § 1254(a) and (e) (repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208 § 308(b)(7), 110 Stat. 3009-615 (1996) (effective April 1, 1997)), Id. at 7-8; and those who might be eligible for asylum. Id. at 7. Because Mr. Perez-Madrid was advised, albeit as part of a group and the outset of his hearing, that he might be eligible for the various forms of relief, and because the content of the advisement to Mr. Torres-Viegas could not have reasonably been interpreted to apply to Mr. Perez-Madrid's situation, we conclude that his deportation hearing was not fundamentally unfair.

2. Prejudice

Moreover, we agree with the district court that Mr. Perez-Madrid failed to demonstrate that he was prejudiced by the allegedly erroneous advisement to Mr. Torres-Viegas. He argues that he was "eligible for relief under § 244 and possibly under § 212(h) [of the INA], but was advised none was available to him, or to the other aliens present at this uncounseled mass deportation hearing." Aplt. Br. at 16-17. Consequently, he argues that had it not been for the "comments that essentially told the 20 aliens that the new law precluded relief from deportation," he would have had "'plausible' grounds for relief from deportation under either § 244 or § 212(h)." Id. at 18 This argument is without merit. As noted above, it is the defendant in a § 1326 prosecution that has the burden to establish that the

deportation relied upon by the government was the result of proceedings that were fundamentally unfair and that he or she was prejudiced as a result. See Aguirre-Tello, 324 F.3d at 1188. Mr. Perez-Madrid has failed to discharge that burden.

Mr. Perez-Madrid first argues that he had a "plausible ground" for relief under § 244 of the INA. This section, which was codified at 8 U.S.C. § 1254 (1995), prior to being repealed effective April 1, 1997, provided two forms of relief from deportation: suspension of deportation under § 1254(a), and voluntary departure under § 1254(e). Significantly, relief under § 1254(a) was completely discretionary with the Attorney General, and even then was available only if an alien such as Mr. Perez-Madrid (1) was physically present in the United States for a continuous period of seven years prior to the application for suspension of deportation, (2) proves that "during all of such period he was and is a person of good moral character," and (3) is a person whose deportation would , in the opinion of the Attorney General, "result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1254(a)(1) (1995).

The problem with Mr. Perez-Madrid's reliance on § 1254(a) to show prejudice in this action is that he has made no showing that he would have been eligible for the discretionary relief provided by the section. In his brief, he argues only that he was continually present in the United States for over seven years

prior to his 1997 deportation. Aplt. Br. at 11-12. However, our review of the record and his brief reveals no suggestion or proof that he was a person of good moral character during that seven-year period–a claim which, even if raised, would have likely been fruitless given his Kansas convictions in 1991 (six years prior to his deportation hearing) for attempted burglary and attempted aggravated sexual battery. I R. Doc. 29, App. C (Journal entries). The same analysis applies to the availability of relief under § 1254(e). The remedy previously provided in that section–voluntary departure–required a showing of good moral character for a five-year period preceding the application for relief and, like suspension of deportation, was within the discretion of the Attorney General. In his brief, however, Mr. Perez-Madrid does not even mention voluntary departure as a form of relief that would have been available but for the alleged errors made by the IJ, much less attempt to show that he was a person of good moral character for the requisite period. Consequently, we hold that Mr. Perez-Madrid has failed to satisfy his burden of showing that there is a reasonable probability that he would have obtained relief under § 1254.

We likewise reject Mr. Perez-Madrid's claim that he had a "plausible" ground for relief under § 212(h) of the INA, and that he therefore satisfied his burden to demonstrate prejudice from the alleged errors in his deportation hearing. Aplt. Br. at 17-18. Section 212(h), which is codified at 8 U.S.C. §

1182(h), provides that the Attorney General may, in his discretion, waive deportation of certain aliens upon a showing that the deportation would result in "extreme hardship" to the alien's spouse, parent, or child who is a United States citizen or a lawful permanent resident. 8 U.S.C. § 1182(h)(1)(B). Mr. Perez-Madrid argues that this form of relief was available because he had a common law marriage with a U.S. citizen, and was "the main breadwinner and took care of his wife and here (sic) three children." Aplt. Br. at 12.

Even if § 1182(h) relief could be based on the existence of a common law marriage, we do not believe Mr. Perez-Madrid has satisfied his burden because he has not demonstrated that he had a valid common-law marriage. In Kansas, the state where he resided prior to being deported, a common law marriage exists only if the putative spouse can demonstrate that (1) the parties have the requisite capacity to marry, (2) there is a "present marriage agreement between the parties," and (3) the parties have held themselves out to the public as husband and wife. In Re Estate of Hendrickson, 805 P.2d 20, 21 (Kan. 1991). Although Mr. Perez-Madrid has alleged that he and his putative wife held themselves out to the public as husband and wife, he has offered no evidence, or even argued, that there was a present agreement to marry as required by Kansas law. Furthermore, the extent of Mr. Perez-Madrid's "extreme hardship" argument required by § 1182(h) is that such hardship would attend his deportation because he was the "main

breadwinner" and that he helped care for his common-law wife's children. Aplt. Br. at 12. We do not believe this is enough to satisfy his burden of showing that he had a reasonable probability of obtaining relief under this section. "It is well settled that economic detriment alone is insufficient to satisfy the extreme hardship requirement." Michelson v. INS, 897 F.2d 465, 469 (10th Cir. 1990); see also Luna-Rodriguez v. INS, 104 F.3d 313, 315 (10th Cir. 1997) (noting that in the suspension of deportation context, Congress has authorized "extreme hardship" relief "only when other factors such as advanced age, severe illness, family ties, etc. combine with economic detriment to make deportation extremely hard on the alien or the citizen or permanent resident members of his family") (quotations omitted). In light of the lack of factual support underlying his theory of relief under this section, we conclude that Mr. Perez-Madrid has failed to carry his burden of establishing a reasonable probability that he would have obtained relief under § 1182(h).

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge